The **UNITED STATES**, Appellant,

v.

**OXFORD INTERNATIONAL CORP.**, Appellee.

Customs Appeal No. 75–1.

United States Court of Customs and Patent Appeals.

June 26, 1975.

Carla A. Hills, Asst. Atty. Gen., Irving Jaffe, Acting Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, David A. Ast, New York City, for the U. S.

Allerton deC. Tompkins, New York City, attorney of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This Government appeal is from the judgment of the United States Customs Court, 375 F.Supp. 1369, 72 Cust.Ct. 187 (1974), sustaining appellee's claim protesting against the classification of goods commonly known as "bicycle mirrors," under Item 544.51, TSUS, as "Mirrors, * * * with or without frames or cases * * * : Not over 1 sq. ft. in reflecting area." Appellee claimed that the proper classification was under Item 732.36, TSUS, as "Other parts of bicycles," relying on the "more than" doctrine. We reverse.

The question before us is one of law, there being no substantial question as to any of the relevant facts. Exhibit 1, in evidence, is a sample of the imported merchandise from which we have made the sketch reproduced below to show as clearly and as simply as possible exactly what it is.

Referring thereto, the imported bicycle mirror consists of a circular encased mirror 1, shown from the rear, which is three inches in diameter. The mirror itself is of silvered glass encased in a stamped sheet-steel backing 2 which is slightly convex, its front edge being rolled inwardly so as to secure the glass element. Protruding from the back is a rigid, quarter-inch diameter threaded post 3 about five-eighths of an inch long which is staked in place. Surrounding the post is a U-shaped clamp 4 having two legs provided with holes to fit over the post, the legs being urged toward one another by tightening a wingnut 5. Mounting rod 6 has an overall length of eight inches, is bent at an obtuse angle at 7, and has its shorter distal end threaded for about an inch and a half. A stamped sheet-steel clamp 8 is positioned on the threaded portion of the rod between two nuts 9, 10 whereby rod 6 can be secured in any desired position on

the handlebar of a bicycle. Mirror head 1 can be positioned on rod 6 at any desired point and in any position by clamp 4 and can also be completely removed from the rod. In use, the article serves as a rear-view mirror.

The Customs Court held that the bicycle mirror is, in the sense of customs law, an entirety, sold and used as a bicycle mirror except for uses properly categorized as "fugitive" uses. Appellee does not contest any of these findings but rests its case on the "more than" theory on which it prevailed below.

## OPINION

We find that it was error to apply the "more than" doctrine. We assume familiarity with the Customs Court's opinion and will limit our discussion to pointing out why we find it was error to apply that doctrine. As background, we will first state our impression of how the Customs Court arrived at such application.

As above stated, Item 544.51 uses the expression "Mirrors * * * with or without frames or cases * * *." At a critical point in its reasoning the Customs Court opinion says:

> The tariff item speaks only of "frames or cases," and in its pleadings the defendant [the U.S.] "admits that the mounting portion of the merchandise is neither a frame nor a case for a mirror." Hence, the importation is not covered by item 544.51, nor is there any other tariff provision that specifically covers bicycle mirrors. [Emphasis ours.]

Thus the court decided that plaintiff-appellee had sustained the first half of its burden of proof—to establish that the imports were improperly classified under Item 544.51—and went on to find that appellee had also sustained the second half of its burden to show that the mirrors were parts of bicycles under Item 732.36.

We think the above reasoning involved a non sequitur. That the mounting parts of the import—i. e., all parts other than the round mirror head element consisting of parts 1, 2, and 3—are per se neither "a frame nor a case" does not necessarily take the imports out of Item 544.51. Like appellee's brief before us, the lower court quoted as absolute an admission by defendant which was a highly qualified admission.

It is important to note just what the pleadings said. Paragraph 20 of the complaint reads:

> 20. The mounting portion of the merchandise is neither a frame nor a case for a mirror, nor a part of a frame or a case for a mirror.

Paragraph 20 of defendant's answer reads:

> 20. [Defendant] Admits that the mounting portion of the merchandise is neither a frame nor a case for a mirror; denies * * * that the mounting portion of the merchandise is not a part of a frame or a case for a mirror; and further avers that the mounting portion is a part of the imported merchandise, i. e., a mirror.

We do not think that the first clause of paragraph 20 of the answer can be read by itself as a broad admission when coupled, as it is, with a claim, stated in both negative and positive form, that the mounting parts are either a *part* of a frame or case for a mirror or a *part* of a mirror.

It is to be borne in mind in this discussion that appellee's claim is for classification under Item 732.36 as "Other *parts* of bicycles" (emphasis ours), and that General Interpretative Rule 10(ij) is to be considered in dealing with this *parts* provision in that it says a provision for parts "does not prevail over a specific provision for such part." The question thus is whether Item 544.51 is a specific provision covering the imports. Having held that it is not, the Customs Court concluded that Rule 10(ij) has no application.

As we see it, the nub of the matter is whether the mounting parts (4 through 10 in the sketch) are, as a matter of law, parts of a frame or case for supporting

the glass mirror, in the entirety known both commonly and commercially as a bicycle mirror, when it is in use on a bicycle handlebar. We think they are and we know of no precedent or authority for not so holding. We note that in holding to the contrary the Customs Court neither cited nor discussed any precedent to support its application of the "more than" doctrine. We do not question that doctrine; we have applied it many times. Appellee's brief cites seven of our "more than" decisions on many different items of merchandise, including two on mirrors. We will discuss those two mirror cases first because they are superb illustrations of the kind of case which this one is not.

In United States v. Bonwit, Teller & Co., 17 CCPA 96, T.D. 43429 (1929), this court applied the "more than" doctrine in excluding from paragraph 230 of the Tariff Act of 1922 (which provided, inter alia, for "all mirrors * * * with or without frames or cases") certain enameled silver powder boxes, circular, about 3 inches in diameter, three quarters of an inch thick, and containing a mirror in the lid. It suffices to copy the quotation from the opinion which is in appellee's brief, taken from 17 CCPA at 100:

> The mirror is a minor part of the beautiful and elaborate powder box to which it is fastened. Due, probably, to their beautiful workmanship and valuable material they sell at from $25 to $32. We do not think they are mirrors in frames or cases for the reason that they are more than mirrors in frames or cases.

In Freedman & Slater v. United States, 17 CCPA 104, T.D. 43431 (1929), the same statute was involved and the goods were described as "a soft leather case made with pockets for holding arti-

cles and closing like a book, with a mirror pasted on the inside of one of the flaps." The court said, "They were designed for the purpose of holding various articles such as powder, powder puffs, lip stick, combs, and other like toilet articles, and, on some occasions, are preferred to hand bags of larger size." The court held they were not mirrors, as classified, but hand or toilet bags dutiable under paragraph 1432, Tariff Act of 1922.

Characteristic of these, the only cited cases from this court involving mirrors, is the fact that the mirror was incidental to an article having another function than that of a mirror. Here the imports have no function other than that of a mirror. Similarly with the other cases cited by appellee, in each there was a second significant function in the importation justifying the application of the "more than" doctrine. We shall merely mention them briefly. United States v. Howard Hartry, Inc., 477 F.2d 1400, 60 CCPA 140 (1973), involved marine diesel engines with reverse and reduction gears. By reason of the gears we held them to be more than internal combustion engines. Obviously the gears added a function to that of the engine alone, and it was held to take them out of a provision for "Internal combustion engines * * * Compression-ignition engines," TSUS Item 660.42. United States v. Acec Electric Corp., 474 F.2d 1009, 60 CCPA 113 (1973), involved electric motors for use as power sources for industrial sewing machines, and we held them to be more than motors because of built-in clutches by which they could be connected and disconnected from the sewing machines while the motor runs continuously. The clutching function was an addition to the function of the motor in supplying power.[1] Dollar Trad-

---

1. Another "more than" case which has not been cited herein is United States v. A. W. Fenton Co., 49 CCPA 45, C.A.D. 794 (1962). The imports were motor and gear assemblies for Hoover electric floor polishers. They included, assembled in a single casting, an electric motor the output shaft of which was provided at each end with worm gears and in engagement therewith two other gears and shafts driven thereby, disposed at right angles to the motor armature shaft. We held that the entirety was more than a motor; it constituted most of the mechanism of a floor polisher, "the principal component of the complete polisher." The opinion cites United States v. Electrolux Corp., 46 CCPA 143, C.A.D. 718

ing Corp. v. United States, 468 F.2d 631, 60 CCPA 10 (1972) (see lower court opinion for facts), involved a small tool for use in electric drills which had the double function of a drill and a rotary file or rasp. Being drills, they were held to be more than rotary files. In United States v. Flex Track Equipment Ltd., 458 F.2d 148, 59 CCPA 97 (1972), we affirmed a holding that belting which had been further manufactured into endless vehicle track treads had become more than belting. We said:

> The article was subjected to a process of manufacture which invested it with new functions. This transformation made it more than the article in its original state.

United States v. New York Merchandise Co., 435 F.2d 1315, 58 CCPA 53 (1970), involved stuffed, plush-covered, toy poodle dogs 12 inches in length which were held to be more than "Toy figures of animate objects" because inside the toy dog was a battery-powered transistor radio.

The fundamental difference between the case at bar and the foregoing precedents in this court is clear. The rearview bicycle mirror entirety has a single function only, namely, its function as a mirror. The mounting bracket merely facilitates that function. The same distinction exists with respect to the situation in H. Kempner v. United States, 11 Cust.Ct. 173, C.D. 820 (1943), cited by appellee, wherein the lower court held that a shaving set having a mirror was more than a mirror. The set included features adding at least two other functions, a soap dish and a holder apparently intended for a shaving brush.

We believe, and we so hold, that the mounting bracket parts of the imports here, as above described, are but parts of "frames or cases" and that it was error to hold that the imports are "more than" mirrors with frames or cases and thus not within Item 544.51. That item is,

therefore, a specific provision covering the merchandise, Rule 10(ij) does apply, and the imports are thereby taken out of the bicycle parts provision. Appellee, therefore, did not sustain its burden of proving that the imports were erroneously classified, and we do not reach the issues pertaining to its claimed classifications.

The judgment of the Customs Court is reversed.

---

(1959), which involved similar merchandise but was decided, consistently with Fenton, on relative specificity grounds. See also our most

recent decision on the "more than" doctrine, Pollard Bearings Corp. v. United States, 511 F.2d 568, 62 CCPA —— (1975).