The ENGLISHTOWN CORPORATION

v.

UNITED STATES.

C.D. 4642;  Court No. 69/9811–44656–68.

United States Customs Court.

March 23, 1976.

Allerton deC. Tompkins, New York City, for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C. (Robert B. Silverman, New York City, trial atty.), for defendant.

Freeman, Meade, Wasserman, Sharfman & Schneider, New York City (Louis Schneider and Thomas G. Travis, New York City, of counsel), for Clairol, Inc., amicus curiae.

## OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

BOE, Chief Judge:

In the instant action the plaintiff has moved for summary judgment pursuant to rule 8.2 of this court. The defendant has denied plaintiff's allegation that there are no genuine issues of material facts to be resolved and submits that said action should be tried by the court with respect to the facts in issue. However, the defendant alternatively has cross-moved for summary judgment in its favor in the event this court should

find that no disputed issues of fact exist sufficient to preclude a determination of the instant action on the motions for summary judgment.

The merchandise in question, identified and described in the pleadings as "Electric Travel Beauty Kits," was imported from Japan by the plaintiff and entered at the port of New York on January 25, 1968. Upon liquidation the merchandise was classified under item 544.51, TSUS, as modified by Presidential Proclamation 3822 (T.D. 68–9) with duty assessed at the rate of 29.5% ad valorem, providing:

> Mirrors, made of any of the glass described in items 541.11 through 544.41, with or without frames or cases (except framed or cased mirrors of precious metal, and mirrors designed for use in instruments):
> 544.51     Not over 1 sq. ft. in reflecting area ....................29.5% ad val.

The plaintiff, however, contends that the merchandise should be classified as an entirety under item 688.40, TSUS, as modified by T.D. 68–9 providing:

> 688.40 Electrical articles, and electrical parts of articles, not specially provided for ..........................10% ad val.

In its complaint the plaintiff has made alternative claims for the classification of the merchandise in question under items 706.60, 653.35, 653.37, 653.39, 653.95, 654.00, 657.20 and 657.35, TSUS.

From the statement of material facts filed by the respective parties in accordance with the provisions of rule 8.2(b), it appears that no genuine issue of fact exists which precludes this court from making a determination of the instant case upon the motion and cross-motion for summary judgment as submitted. The initial attention of this court, accordingly, is directed to a determination as to whether the plaintiff has successfully met the first portion of its dual burden of proof by producing sufficient evidence to support a conclusion that the classification of the customs official was erroneous. *United States v. New York Merchandise Co., Inc.*, 435 F.2d 1315, 58 CCPA 53, C.A.D. 1004, (1970). In attempting to meet this burden the plaintiff asserts that the merchandise in question properly falls within the "more than" doctrine of customs law and that, accordingly, its classification must be other than the *eo nomine* designation of a mirror.

From the many decisions of this court and our appellate court which have considered the "more than" doctrine, it is well settled that the ultimate determination of this question of law is necessarily dependent on the facts of each individual case. *E. Green & Son (New York), Inc. v. United States*, 450 F.2d 1396, 59 CCPA 31, C.A.D. 1032 (1971). Discussing the rationale of this doctrine, the Customs Court in the case of *Irving W. Rice & Co., Inc. v. United States*, 65 Cust.Ct. 125, 129, C.D. 4064 (1970), stated:

"* * * the 'doctrine' is directed, not to the question of their component material of chief value, but to the question as to whether the articles are predominately *mirrors* in frames or cases or are more than *mirrors* in frames or cases."

Thus, it has been determined that an article consisting of an "enameled silver powder box" with a mirror affixed to the lid was more than a mirror in a frame or case for the reason that the mirror was a minor and an incidental part of an elaborate and expensive box. *United States v. Bonwit, Teller & Co. et al.*, 17 CCPA 96, T.D. 43429 (1929). With similar reasoning merchandise consisting of a folding leather case, containing pockets for holding miscellaneous articles and with a mirror fastened on one of the flaps, was determined to be more than a mirror for the reason that its principal function was designed to hold and carry miscellaneous toilet articles. *Freedman & Slater v. United States*, 17 CCPA 104, T.D. 43431 (1929). Conversely, in a recent decision of the Court of Customs and Patent Appeals, it was determined that a rearview bicycle mirror attached to the bicycle by a bracket was properly classified as a mirror under item 544.51, TSUS, and not subject to the application

of the "more than" doctrine. The said article was held to possess a single function only, namely—that of a mirror. *United States v. Oxford International Corp.*, 517 F.2d 1374, 62 CCPA 101, C.A.D. 1154 (1975). In distinguishing those decisions in which the "more than" doctrine has been determined to be applicable, the court stated:

"Similarly with the other cases cited by appellee, in each there was a *second significant function* in the importation justifying the application of the 'more than' doctrine." 517 F.2d at 1377, 62 CCPA at ——. [Emphasis added.]

■ In summary, the applicability of the "more than" doctrine necessarily requires the determination from all of the evidentiary facts presented of the following inquiries: (1) Does the article possess a predominant and principal function and are the other capabilities or uses of the article ancillary or incidental thereto? (2) Does the article in question possess a "second significant function"? An affirmative answer to inquiry (1) and a negative answer to inquiry (2) serve to preclude the application of the doctrine. *Oxford International Corp., supra.*

Examination of representative samples of the merchandise in question submitted as exhibits by the plaintiff reveals that the article consists of a plastic case or container approximately 13″ long, 9″ high and 3″ wide with a handle attached to the top side. One side of the container is removable and a relatively small portion thereof includes a compartment divided into three partitions suitable for some storage.*

In a storage space near the bottom of the plastic container, also described as a kit, there is an electric cord which may serve to connect the male electric plug of the kit to an electric power outlet. When the opposite side of the container is removed, two metal backed mirrors, back to back and mounted in one frame (one mirror conventional, one mirror magnified) approximately 8¼″ long and 6¼″ high, are permitted to freely revolve and rotate. The article contains certain electrical features consisting of (a) four electric light bulbs, each inserted into a "screw-in" electric socket and positioned immediately in front of movable metal reflectors, capable of diverting light to and from the encased mirror within the kit, (b) a three-position switch —off, low and high, (c) an electric outlet to which electrical appliances may be connected, and (d) an internal electrical wiring system permitting the use of the outlets and electric bulbs aforedescribed.

The plaintiff has further submitted affidavits of two witnesses, the primary purport of the testimony of each being a description of the basic character of the article in question. The testimony includes the fact that the electric light bulbs permit the use of the article as a reading and work light or as a night light; that the electrical outlet permits one to connect thereto such electrical appliances as "razors," "manicure and pedicure kits," vibrating massage appliances," "hot rollers," and "toothbrushes," all of which do not necessarily require the use of a mirror. Further testimony is adduced by the plaintiff in the form of an affidavit that the cost value of the mirror is significantly less than the metal wiring or other component parts of the article in question.

■ Although the court is of the belief that the testimony adduced through affidavits and presented herein relates to facts which are properly admissible in evidence, considerable doubt exists in the mind of the court with respect to the sufficiency as well as the probative value of this testimony. The affidavit of a witness recites at length the capabilities and use other than that of a mirror to which the merchandise in question might be employed. Such general statements, however, at the most can be construed only as declarations and conclusions without further corroboration. *Keer, Maurer Company v. United States*, 46

---

* One partition is approximately 7½″ by 2½″, a second partition is approximately 4½″ by 3½″ and a third partition is approximately 3″ by 3¼″.

CCPA 110, C.A.D. 710 (1959). It is obvious that *any* electrical appliance, whether it be a toaster, blender, percolator, razor or toothbrush, possessing a cord bearing a suitable connecting plug may be inserted into the female electric outlet of the merchandise in question in the same manner as such an appliance might be connected to any wall electrical outlet. No testimony, however, has been adduced with respect to the value, the extent, degree or use of its capabilities. Mere characterization of the merchandise is not a substitute for proof of its utilization.

■ The plaintiff's brief has referred to the sample kit as a "potent witness." It is, indeed, possible that an exhibit may be so characterized. *United States v. The Halle Bros. Co.,* 20 CCPA 219, T.D. 45995 (1932). *Marshall Field & Co. v. United States,* 45 CCPA 72, C.A.D. 676 (1958). However, in the instant case this court does not share such a conclusion. Examination and inspection of the sample submitted by plaintiff in connection with its motion for summary judgment appear to negate the basic contention of the plaintiff that the merchandise in question is "more than" a mirror. In the absence of affirmative testimony to the contrary, it would appear unlikely to the court that the electric light feature of the beauty kit would be used as a reading or work light—if any other reasonable source of light were available. Nor would it appear probable to the court in the absence of affirmative testimony to the contrary that the electric outlet would be used to any appreciable extent as a "connecting source" in the operation and use of an electric toothbrush or the other appliances referred to in the affidavit of plaintiff's witness (Mercer). The principal and predominant function of the article in question is that of a mirror. Without a doubt the illumination of the mirror through means of electric light bulbs and reflectors will, on occasion, make the use thereof desirable. The fact remains, however, that the mirrors are well capable of use with or without additional illumination and that

the use of the light in connection therewith only serves to enhance the principal and predominant function and purpose of the article in question. *Ross Products, Inc. v. United States,* 433 F.2d 804, 48 CCPA 1, C.A.D. 994 (1970). In connection with the foregoing, it is believed that the comments of this court in the case of *Astra Trading Corp. v. United States,* 56 Cust.Ct. 555, 561, C.D. 2703 (1966), are particularly applicable:

"We do not believe that the additional feature of illumination transforms the basic purpose of the imported article from use as a screwdriver into some other use; nor do we believe that the illuminating feature gives the article a use in addition to its intended use as a screwdriver. For, illumination notwithstanding, the article remains essentially a device restricted to the use of turning screws, i.e., a screwdriver. Our decision also is influenced by the well-established principle that, in determining classification, an *eo nomine* designation must, unless a contrary legislative intent clearly is indicated, be preferred to terms of general description and to enumerations which are broader in scope and less specific."

Neither from the testimony submitted by affidavit nor from the exhibit itself has sufficient evidence been presented to establish that the merchandise in question possesses " * * * a second significant function * * * justifying the application of the 'more than' doctrine." *Oxford International Corp. v. United States, supra.*

■ Although the complaint of the plaintiff contains numerous claimed alternative classifications, no appreciable reference or discussion has been made with respect thereto except as to the item relating to a description of the merchandise in question and included in plaintiff's statement of material facts supporting its motion for summary judgment and denominated as: "7. Iron or steel base metal is the component material of chief value, which metal is not coated or plated with precious metal." It appears manifest that the foregoing

description is specified for the purpose only of distinguishing the mirror in question from "framed or cased mirrors of precious metal." Although the component material of chief value of an article may on occasion have some weight in the determination of its classification, once the predominant feature or function of an article has been established, as in the instant case, the chief value of its component materials is no longer a fact in issue. *Alltransport, Inc., Sterling Novelty Products v. United States,* 58 Cust.Ct. 98, C.D. 2896 (1967); *Irving W. Rice Co., Inc. v. United States,* 65 Cust.Ct. 125, C.D. 4064 (1970).

The plaintiff has failed to sustain its first burden of proof to overcome the presumption of correctness attaching to the classification of the customs official and to establish that such classification is erroneous. It, therefore, is unnecessary and without purpose for this court to consider the claimed correct classification or the alternative classifications urged by the plaintiff in its effort to sustain the second portion of its dual burden of proof.

Accordingly, the cross-motion of the defendant for summary judgment be and is hereby granted, and the motion of the plaintiff for summary judgment is in all things denied.

Let judgment be entered accordingly.