The ENGLISHTOWN CORPORATION, Appellant,

v.

The UNITED STATES, Appellee.

Customs Appeal No. 76–24.

United States Court of Customs and Patent Appeals.

April 21, 1977.

Freeman, Meade, Wasserman, Sharfman & Schneider, New York City, attys. of record, for appellant; Allerton DeC. Tompkins, Louis Schneider, Thomas G. Travis, New York City, of counsel.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Chief, Customs Section, Joseph I. Liebman, attys. of record, New York City, for appellee.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Judges, and PHILIP NICHOLS, Associate Judge, United States Court of Claims.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, 409 F.Supp. 764, 76 Cust.Ct. 107, C.D. 4642 (1976), sustaining the classification of certain articles as "Mirrors" under TSUS item 544.51. We reverse and remand.

The articles are invoiced as "Electric Travel Beauty Kits." The invoice notwithstanding, a label on appellant's Exhibit 2, a sample of the imported merchandise, describes it as a "portable illuminated, two-way make-up mirror." When not in use, each article appears to be a small plastic vanity case,[1] approximately 13″ long, 9″ high, and 3″ wide, with a handle attached to the top. To use the article, one side of the case, which has an integral covered compartment for cosmetic articles, is removed and the other side, which is permanently hinged to the bottom of the case, is opened so that it and the remainder of the case form an adjustable stand for a two-sided mirror (one side normal, one side magnifying) in a molded plastic rotatable frame pivoted on its horizontal axis. The mirrors

1. See *Webster's Third New International Dictionary* (1971), p. 3532, "vanity" definition 5b.

are about 8 inches long and 6 inches high. At each side of the rotatable frame, as part of the stand, is a two-bulb electric lamp, each lamp having its own adjustable, rotatable, semicylindrical reflector. The brightness of the lamps is controlled by a common three-way switch. Also on the stand, below the rotatable frame, is a single electrical receptacle to which an electrical appliance may be connected. The receptacle and the four electric lamps are energized via a conventional power cord and a small storage compartment is provided for it under the mirror on the back of the case.

### Statutory Provisions

The articles were classified under TSUS item 544.51:

> Mirrors, made of any of the glass described in items 541.11 through 544.41, with or without frames or cases (except framed or cased mirrors of precious metal, and mirrors designed for use in instruments):

| 544,51 | Not over 1 sq. ft. in reflecting area .............. [29.5]% ad val. |
| --- | --- |

Appellant claims the articles should be classified under TSUS item 688.40: [2]

| 688.40 | Electrical articles, and electrical parts of articles, not specially provided for .................... [10]% ad val. |
| --- | --- |

### Proceedings Below

Before the Customs Court, appellant argued that the Government's classification was erroneous because the type of article involved is "more than" a mirror. To support that argument, appellant pointed to the article itself and to four affidavits. The affidavit of Tomonari, the general manager of the Japanese company which assembled the imported articles, purports to be a cost analysis. The analysis assigns a value of $0.416 to the mirror and frame portion of each article, based on the cost of glass, plastic, metal and assembly. The total cost assigned to the imported article is $4.314. There are two affidavits by Mercer, who was appellant's president at the time

the subject articles were imported. The affidavits describe the article in some detail, categorizing it as a "portable toilet kit." They also state that the electric lamps allow the article to be used as a work, reading, or night light and that the power outlet or receptacle could be used for electrical appliances not requiring the use of a mirror, such as an electric toothbrush. One of the two Mercer affidavits states that the item is "much more" than a mirror, and that the mirror and frame portion ("which can be readily removed") has a cost amounting to less than 10% of the total cost of the article. The fourth affidavit, by appellant's attorney, merely identifies appellant's exhibit 3, which is one of three exhibits representative of the imported articles.

On cross motions for summary judgment, the Customs Court found that appellant had failed to demonstrate that the imported articles were more than mirrors, basing its conclusion on two inquiries:

> * * * the applicability of the "more than" doctrine necessarily requires the determination from all of the evidentiary facts presented of the following inquiries: (1) Does the article possess a predominant and principal function and are the other capabilities or uses of the article ancillary or incidental thereto? (2) Does the article in question possess a "second significant function"? An affirmative answer to inquiry (1) and a negative answer to inquiry (2) serve to preclude the application of the doctrine.

The Customs Court had "considerable doubt" as to the sufficiency and probative value of the affidavit evidence, particularly "general statements" that the imported articles were capable of uses not involving the mirror, statements it viewed "only as declarations and conclusions * * *." On considering the exhibits, the Customs Court found such uses "unlikely" and that the "predominant function of the article in

---

2. Below, appellant asserted alternative claims for classification under TSUS items 706.60, 653.35, 653.37, 653.39, 653.95, 654.00, 657.20, and 657.35. At

the hearing of this appeal, however, appellant expressly abandoned these claims "for this appeal."

question is that of a mirror." The illumination feature the Customs Court found "only serves to enhance the principal and predominant function and purpose of the article in question." Thus, the Customs Court also found that the evidence was insufficient to demonstrate that the merchandise possesses a "second significant function." Having so concluded, the Customs Court found it unnecessary to consider the claimed classification.

## OPINION

The Customs Court erred in deciding this case on the basis that there is a dispositive "more than" doctrine and by finding that the imported articles were not "more than" mirrors. In 1971, this court summarized its views of the so-called "more than" doctrine:

Only the most general of rules can be ascertained from the previous decisions dealing with the "more than" doctrine, and it appears that each case must in the final analysis be determined on its own facts. See *United Carr Fastener Corp. v. United States,* 54 CCPA 89, C.A.D. 913 (1967), and the cases cited therein. In order to determine if an article is more than that provided for in a particular tariff provision, it is necessary to ascertain the common meaning of the tariff provision and compare it with the merchandise in issue. [*E. Green & Son (New York), Inc. v. United States,* 450 F.2d 1396, 1398, 59 CCPA 31, 34, C.A.D. 1032 (1971).]

While there was a dissenting opinion in that case, the dissenters were in agreement with the above-quoted statement. They said:

The "more than" doctrine, as it might be termed, is not a clear-cut rule and the majority may be a prophet in its skepticism toward the possibility of determining reasonably certain contours by which to define the doctrine. It is difficult to extract meaningful principles from prior cases in which this court or the Customs Court has been faced with the contention that the merchandise at bar is more than an article specifically provided for in the Tariff Schedules. [*Id.* 450 F.2d at 1401, 59 CCPA at 37.]

■ From the above, it can be seen that there is little dispositive "doctrine" associated with the so-called "more than" doctrine. Thus, while in certain cases factors such as the "predominant function" of an article, or its possession of a "second significant function," might have been important, these factors are not uniquely dispositive. To say that an article is "more than" that described by a particular tariff provision is to say little more than that, in the opinion of the court, the provision cannot be interpreted to cover it. In making this determination, however, the advice in *Green* is to first determine the meaning of the tariff provision involved.

■ TSUS item 544.51 is found in Subpart B, Part 3, Schedule 5 of the TSUS. Headnote 1 of Subpart B, paragraph 1, states that that subpart covers "flat glass and certain articles made therefrom." Proceeding through the subpart, items 541.01 to 544.42 refer to "glass" of various descriptions, presumably the flat glasses of the headnote. Near the end of the subpart are certain items referring to articles not themselves described as glass but stated to be "made of any of the glass described in items 541.11 through 544.41". The last item in the subpart (TSUS 544.64) refers to certain "glass windows." Presumably these last items are the "certain articles" of flat glass mentioned in the Subpart B headnote, paragraph 1. TSUS item 544.51 is one of these last items; it refers to "Mirrors, made of any of the glass described in items 541.11 through 544.41, with or without frames or cases * * *." Since the existence of a frame or case is clearly immaterial to classification under TSUS item 544.51, it appears that the word "Mirrors" merely refers to a sheet (or other appropriate form) of flat glass backed with a reflecting coating. It is true that this sheet of glass will be dutiable under TSUS item 544.51 even if it is framed or cased, but this is as far as the coverage of that item appears to go. This interpretation is consistent with the understanding of the term as it has been employed in the tariff statutes. The 1948

*Summaries of Tariff Information* refer to "Glass mirrors, n.s.p.f., not exceeding 144 square inches in size," which were covered by Paragraph 230(b) of the Tariff Act of 1930, as then amended. 2 *Summaries of Tariff Information,* Part 2, page 131 (U.S. Tariff Commission, 1948). These mirrors are described as "usually made from sheet glass" and are said to "include a great variety of types, such as those used for the boudoir, and those used for handbags and vanity cases." *Id.,* p. 132. Subsequent to the promulgation of the TSUS, the Tariff Commission began publishing its *Summaries of Trade and Tariff Information,* which describe the mirrors covered by TSUS item 544.51 as made "by coating one side of plate, float, or sheet glass with a reflecting medium" and that they "include a great variety of types such as those used in automobiles, for shaving, in boudoirs, in cosmetic cases, and in handbags." *Summaries of Trade and Tariff Information,* Schedule 5, Volume 5, p. 103–4. (TC Publication 365, 1971). With respect to the larger mirrors, the 1948 *Summaries* refer to "Plate and sheet glass mirrors over 144 square inches in area," describing them as being "used principally in furniture, in doors, and for decorative purposes in homes and public buildings." 2 *Summaries of Tariff Information,* supra, pp. 75–76. Similarly, the 1971 *Summaries* refer to the mirrors of item 544.54 (which are identical to those described in TSUS item 544.51, except that their reflecting areas are over one square foot) as "used principally in furniture, in doors, in medicine cabinets, and for decorative purposes in homes and public buildings." *Summaries of Trade and Tariff Information,* supra, p. 104. The language and distinctions employed in the *Summaries* are quite similar to those employed in the chapter on glass mirrors in an early Tariff Commission report entitled *Flat Glass and Related Glass Products* (Report No. 123, Second Series, 1937). It seems that for at least 34 years, it has been understood that the term "mirrors," as it appears in those parts of the tariff statutes dealing with flat glass, refers to nothing more than sheets of flat glass with reflecting material, as op-

posed to the articles in which they might be employed, such as vanity cases, cosmetic cases, and handbags. The articles at bar are quite similar in nature to these articles just named, as appellant has argued and as is evident upon inspection. Thus, even if TSUS item 544.51 could be termed an unlimited eo nomine provision for mirrors, the legislative intent, as we have ascertained it, would preclude classification of the articles at bar under that provision. That item, however, *is* limited. For one thing, the subpart headnote limits the kind of mirrors covered by TSUS item 544.51 to those made from flat glass; for another, that item itself excludes certain mirrors from its coverage. We therefore hold that the classification of the imported articles under TSUS item 544.51 is inappropriate. The judgment of the Customs Court is, for that reason, *reversed* and, since appellant's claimed classification was not passed on, the case is *remanded* for further proceedings consistent with this opinion.

BALDWIN, J., dissents.