of section 402(f)(1), prevents the consideration of these sales as "freely sold." [4]

The $5.75 price to users at which the largest quantities were sold was nevertheless not a price at which all purchasers at wholesale could buy and could therefore not be the price which satisfies the statutory requirements.

Plaintiff raises the specter of a situation in which only one out of a thousand sales is made at the putatively controlling list price while the remainder are at a lower price. However, it is not necessary to rely here on any principle beyond that which requires the sales at the "American selling price" to be of some reasonable significance and for there not to be a gross or shocking imbalance between the practical significance or commercial meaningfulness of the sales at the higher price and the sales at lower prices. It is enough to note that the price of $8.00 is not subject to question on this point.

For the above reasons, plaintiff has failed to disprove the correctness of the appraised value of $8.00 per gram and its claims must be overruled.

Judgment will enter accordingly.

(C.D. 4760)

ALUMINUM HOUSEWARES CO., INC. *v.* UNITED STATES

---

[4] Section 402(f)(1):

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

*Glad, Tuttle & White* (*Jonathan K. Bellsey* of counsel) for the plaintiff.
*Barbara Allen Babcock*, Assistant Attorney General (*William F. Atkin*, trial attorney), for the defendant.

RICHARDSON, Judge: The merchandise in this case consists of measuring spoons which were exported from Japan in February, 1971, and classified in liquidation upon entry at San Francisco, California under TSUS item 650.56 at the duty rate of 17 *per centum ad valorem* as spoons with base metal (other than stainless steel) or nonmetal handles. It is claimed by plaintiff that the merchandise should have been classified as hand tools (including table, kitchen and household implements of the character of hand tools), not specially provided for, of iron or steel, under TSUS item 651.47 as modified by T.D. 68-9 at the duty rate of 10 *per centum ad valorem*.

The imported article is described on the invoice as Item No. 2700, stainless steel four-piece measuring spoon set with plastic handles in one solid color. And each set consists of four spoons, i.e., a tablespoon, a teaspoon, a one-half teaspoon, and a one-quarter teaspoon. Although plaintiff introduced testimonial evidence at the trial with a view toward presenting a subsidiary issue as to whether the imported article is kitchenware or householdware, the posture which plaintiff heretofore assumed in its pleading eliminates such an issue. Thus, under the pleadings it is admitted that (1) the merchandise is designed to measure food in a proper amount for cooking ingredients as called for by various recipes, (2) the merchandise is used to measure food in a proper amount for cooking ingredients as called for by various recipes, (3) the merchandise is used in the kitchen, and (4) the merchandise is held and operated by the unaided hands. And put in issue under the pleading as issues of law are the allegations that (1) the merchandise is more than a spoon, and (2) the function and use of a spoon is limited to scooping food.

Bearing on these issues Richard B. Cronheim, plaintiff's president, testified that he was familiar with the item 2700 measuring spoons covered by the entry at bar and that he arranged for the purchase of the spoons from Japan, and that exhibit 1 (consisting of a set of four spoons, among other items, bound in a package) is similar in all material respects to the measuring spoons imported in this case.

The witness testified that he was responsible for the descriptive advertising in the plaintiff's price lists under which the imported article (exhibit 1) is offered for sale under the specific classification

as "Accurate Measuring Aids" while a mixing spoon (exhibit 3) is described therein under the categorization of "Kitchen Tools and Gadgets". In this connection the witness testified (R. 29–30):

Q. Why is Plaintiff's Exhibit 1 depicted under the category for " * * * MEASURING AIDS"?—A. Because that is exactly what it is.

Q. Is Plaintiff's Exhibit 1 considered to have different functions and uses from Plaintiff's Exhibit 3?—A. It certainly does.

Q. Why is Plaintiff's Exhibit 1 not listed under 'the section for "KITCHEN TOOLS AND GADGETS"?—A. Because it really isn't a tool. It is a measuring aid, and that is the only way I could describe it to you. It has a different purpose which is simply to measure.

Q. And because of that you consider its purpose as a measuring aid, which is the primary function of the Plaintiff's Exhibit 1?— A. Yes, I do.

The witness testified that he did not consider exhibit 1 to be a spoon within the lexicographical definition of a spoon because of its shape, its accuracy, and because its capacity is marked. He stated that exhibit 1 differs from teaspoons (exhibits 5 and 6) in that the edges on exhibit 1 are purposely sharp so as to enable the user to cut through solid ingredients in a canister or other storage utensil whereas the edges of tableware are not sharp inasmuch as they are intended to be placed in the mouth.

H. George Maier, a manufacturers' representative with Maier & Associates, Inc. and former president and part owner of Allied Western Distributors, Inc. [both of which are engaged in representing plaintiff as sales representatives] testified (R. 58–59):

Q. Do you think that Plaintiff's Exhibit 1 is amenable to being used as a utensil in the consumption of food?—A. No.

Q. For what reason?—A. Well, it would take an awful long time to eat very much food with these small spoons. Most measuring spoons—and I feel certain these are included in that—are sharp about the edges, and they are sharp for a purpose and that is to clearly cut whatever you are measuring.

Q. In your experience of having participated in the sale of flatware in the western part of the United States, is flatware usually embossed with the capacity of the particular piece? Does a particular spoon have indicated on there that it measures one teaspoon or tablespoon?—A. I have never seen that.

Q. Can a teaspoon be used as a flatware teaspoon to measure a fraction of a teaspoon accurately?—A. Not accurately.

Q. What do you consider to be the primary purpose of Plaintiff's Exhibit 1?—A. Well, to correctly and accurately meter or measure an ingredient or something you might be cooking, something that you might be putting into. In my instance, it was a clothes washer.

Q. And you say that flatware cannot be used to measure an exact quantity of a particular article?—A. Not in my view.

Louise Fiszer, a cooking teacher employed at the Judith Ets-Hokin School of Cooking in San Francisco, California, testified that she is familiar with exhibit 1, has personally used that type of article, has instructed her students with respect to the use of that article, and believes that the proper preparation of a recipe could be thwarted if the person preparing the recipe were to use a teaspoon or tablespoon as opposed to a measuring spoon. The witness also testified (R. 90–91):

> Q. Will you examine Plaintiff's Exhibit 1, and tell me if you believe that those are specially constructed to enable an individual to measure an exact quantity of a particular ingredient?— A. Yes.
>
> Q. In what way would they be constructed to accomplish that purpose?—A. The size of the bowl, I guess, would perform that function.
>
> Q. Is it your experience also that measuring spoons generally have sharp edges, sharper edges than flatware?—A. Yes.
>
> Q. What would be the purpose of a sharp edge on measuring spoons?—A. To scoop things out more readily and easily, to cut through something like shortening which it would just really cut right there.

The foregoing comprises the substance of evidence offered by plaintiff on the issue of "more than" a spoon. Plaintiff argues (brief, p. 19):

> It is evident that the imported articles have a more limited and specific function than spoons in general. The articles in issue are designed and constructed to measure accurately. To this end, they are marked to indicate an exact quantity, and their sharp edges facilitate the scooping of the ingredient to be measured. They generally cannot be used for eating because they are too small, and their sharp edges would cut the tongue. The shape of the bowl of the imported measuring spoon is also significantly different from the shape of spoons, examples of which were introduced as Exhibits 5 and 6.

The government contends that the imported measuring spoons are not more than spoons. The government argues that none of the so-called "limited" and "specific" functions of measuring spoons detract from their being classified as spoons.

The court is in agreement with defendant. In the court's view the imported measuring spoons, of which exhibit 1 is a sample, are spoons within the meaning of item 650.56. In *The Englishtown Corporation* v. *United States*, 64 CCPA 84, C.A.D. 1187, 553 F.2d 1258 (1977) our appellate court reaffirmed its earlier position on the "more than" doctrine enunciated in *E. Green & Son (New York), Inc.* v. *United States*, 59 CCPA 31, 34, C.A.D. 1032, 450 F.2d 1396, 1398 (1971) wherein the court stated:

> In order to determine if an article is more than that provided for in a particular tariff provision, it is necessary to ascertain the

common meaning of the tariff provision and compare it with the merchandise at issue.

*Webster's Third New International Dictionary of the English Language,* p. 2205 (1966) defines a "spoon" as:

[A] usu. metal, plastic, or wooden eating or cooking implement consisting of a small oval or round shallow bowl with a handle— often used in combination [e.g., teaspoon]

and *Funk & Wagnalls New Standard Dictionary of the English Language,* p. 2349 (1956) defines the term "spoon" as:

A utensil having a shallow ovoid bowl and a handle, used in preparing, serving, or eating food.

As employed in item 650.56, the term "spoons" is qualified, among other things, by the phrase "which are kitchen or table ware". *Webster's Third New International Dictionary of the English Language,* p. 1247 (1966) defines "kitchenware" as "hardware (as cutlery and cooking utensils) for kitchen use." And in view of the admissions made by the parties as framed by paragraphs 10 through 13 of the complaint, it is clear that the imported merchandise comes within the ambit of the common meaning of the terms "spoon" and "kitchenware". The imported merchandise, as exemplified by exhibit 1, has a shallow bowl and a handle, and is used in the kitchen in cooking or preparing food.

The common meaning of the term "spoon" is palpably broad, encompassing many articles whose identification as such is invariably qualified by reference to some specific function performed. Thus, a teaspoon is so named because it is used to stir sugar in tea. The same can be said with respect to *slotted* spoons, *mixing* spoons, *stirring* spoons, *mustard* spoons, *tablespoons, dessert* spoons, *grapefruit* spoons, *fruit* spoons, *sugar* spoons, *relish* spoons, *soup* spoons, *serving* spoons, *salad* spoons. And by the same token *measuring* spoons are so named because of their specific function of apportioning exact quantities. In fact, a mere reference to the term "spoon" without a prefix denoting function is meaningless in terms of identifying any particular kind of spoon. Obviously, therefore, variation in function between spoons cannot be the basis for denominating one article a spoon and another not a spoon, as plaintiff seems inclined to do.

It is noted that one lexicon to which the court's attention has been called expressly includes *measuring* spoon in its definition of the term "spoon". See 25 *Encyclopedia Americana* 528 (1973) wherein a spoon is defined as:

[A]n implement consisting of a shallow bowl and a handle, used chiefly for handling food. It may also be used ceremonially or for *measuring.* [Emphasis added.]

Hence, a measuring spoon does not become "more than" a spoon merely because it differs from some other variety of spoon with which it may be compared. And since the measuring spoons at bar are within the common meaning of the term "spoon", and are admittedly kitchenware, it follows that plaintiff has failed to rebut the presumption of correctness attaching to the classification of the imported articles under the provision for spoons which are kitchenware in item 650.56.

In view of this conclusion the court does not reach plaintiff's claim for classification of the merchandise under item 651.47—a classification provision which is at best *residual*.

Protest No. 28091–001569 is severed, and dismissed for untimeliness. The action is dismissed. Judgment will be entered herein accordingly.