NATIONAL PRESTO INDUSTRIES, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 77-12-04907

Before FORD, *Judge.*

(Decided September 2, 1983)

*Stein, Shostak, Shostak & O'Hara (Joseph P. Cox* at the trial and on the brief and *S. Richard Shostak* on the brief) for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Susan Handler-Menahem* at the trial and on the brief), for the defendant.

FORD, *Judge:* The merchandise covered by this action, described on the invoices as "Steel Food Lifters", was classified by Customs as spoons under the provisions of Item 650.56 TSUS and accordingly assessed with duty at 17 percent ad valorem. Plaintiff contends and defendant agrees that, if the Court finds the imported articles are not spoons, said merchandise is entitled to entry free of duty under item A651.47 TSUS by virtue of the Generalized System of Preferences, Pub. L. 93–618 and Executive Order 11888 (November 25, 1975) as claimed. Defendant has conceded that plaintiff has met all requirements for GSP treatment.

In view of the foregoing and plaintiff's withdrawal of its alternative claim under the provisions of Item A648.51 TSUS, said claim is dismissed. By virtue of the stipulation referred to above and the pleadings the sole issue presented for determination by the Court is whether the imported articles are spoons.

The pertinent statutory provisions involved read as follows:

> Forks, spoons, and ladles, all the foregoing which are kitchen or table ware, with or without their handles:

   \*      \*      \*      \*      \*      \*      \*

| | | |
|---|---|---|
| 650.56 | Spoons and ladles:<br>With base metal<br>(except stainless<br>steel) or nonmetal<br>handles | 17% ad val. |

> Hand tools (including table, kitchen, and household implements of the character of hand tools) not specially provided for, and metal parts thereof:

   \*      \*      \*      \*      \*      \*      \*

| | | |
|---|---|---|
| A651.47 | Other \* \* \*.<br>Table, kitchen,<br>and household<br>implements | \* \* \* |

This action was submitted to the court on a record consisting of the testimony of four witnesses called on behalf of plaintiff and one called by defendant. In addition, there were received on behalf of plaintiff six exhibits. Defendant offered and there were received in evidence five exhibits. The official papers were received in evidence without being marked.

Plaintiff called as its first witness Mr. Ron Oakland, a senior vice president and creative director of the advertising agency handling

plaintiff's products. Mr. Oakland testified he has been active in the food industry for thirty-five years and was fully familiar with the marketing of food and kitchen utensils, including the imported merchandise for the past eight years. Exhibit 1 was identified by the witness as representative of the imported merchandise. Exhibit 2, a catalog sheet, was prepared under the witness' direction in early 1976 and refers to the imported article as a scoop. The witness testified that when the involved article was first introduced there had been other catalog or instructional booklets which referred to the item as a spoon. However, since Mr. Oakland felt the term spoon was not descriptive of the imported article, the term was discontinued without knowledge of, and prior to, any controversy which later arose with the Customs Service. Since early 1976 the imported article has been described as a scoop.

The witness identified Exhibits 3A through 3G as sales promotional material, all of which had been prepared under his direction during 1976 and early 1977. These articles were prepared for the purpose of showing the benefits and reasons for the design of the scoop.

The definition of the term spoon from *Webster's Third New International Dictionary of the English Language* (1963), page 2205, *infra*, cited in *Aluminum Housewares Co. Inc.* v. *United States,* 81 Cust. Ct. 24, C.D. 4760 (1978), was read to Mr. Oakland, who agreed that it applied to slotted spoons, but not to the merchandise involved herein. The witness identified plaintiff's Exhibit 4, the Ekco Kitchamajig, which is basically the same as plaintiff's Exhibit 1, and which he would consider to be a gadget or hand tool in the trade, but certainly not a spoon.

Ms. Carol Peterson was then called on behalf of plaintiff. The witness is a graduate of Oregon State University, with a Bachelor of Science degree in food and nutrition, and has been a food writer for *Sunset Magazine.* The witness has also been a food consultant for over eighteen years, as well as serving as a food writer and food stylist. Ms. Peterson had also taken cooking courses under James Beard, the well known authority on cookery and the author of a number of cookbooks.

Ms. Peterson testified she was familiar with the use of plaintiff's Exhibit 1 and its deep fryers. Exhibit 1 is used to lower food into fat to be deep fried. It is also used to turn and to remove the cooked items from the hot fat. According to the witness, the handle must be long enough so the user does not get splattered by the hot fat. Exhibit 1 is a hybrid utensil which she called a food lifter or skimmer. According to the witness, Exhibit 1 is not a slotted spoon, since it does not have a round or oval bowl, which is characteristic of a spoon. If Exhibit 1 had an oval shape it might be considered a spoon, except she had never seen a looped handle on a spoon. Ms. Peterson did not see any substantial difference between Exhibits 1 and 4. In her opinion, Exhibit 4 was not a spoon since it does not

meet the qualifications of the definition of a spoon. She testified that there are spoons utilized for special purposes, such as grapefruit spoons, measuring spoons, sugar spoons, etc. The witness was of the opinion that Exhibit 1 resembled a skimmer, although skimmers generally do not have slots but have holes or are made of mesh. A skimmer is used to remove cooked articles from hot fat or smaller pieces that have broken off and floated to the surface.

While Ms. Peterson was not familiar with defendant's Exhibit C, a nylon slotted spoon, she indicated that it could not be used in hot fat since it would melt, whereas Exhibits 1 and 4 could be so used. The witness further testified that if Exhibit C were made of metal it could not be used in the same manner as Exhibit 1 since it would be unsafe due to the fact that the bowl was so narrow that one would run the risk of having articles fall off and burn the user with the hot oil.

Mr. Sandy Rosenholz, a manufacturer's representative for Pet Accessories and Supplies, was called on behalf of plaintiff. He identified plaintiff's Exhibits 5 and 6 as a plastic cat litter scoop, similar to a metal litter scoop which his company manufactures. He testified that in the pet industry Exhibits 5 and 6 were called cat litter scoops or just scoops. The witness agreed with the *Webster's* Dictionary definition contained in *Aluminum Housewares Co. Inc.,* infra.

The final witness called on behalf of plaintiff was Ms. Judythe Daria Roberts, who testified that she had run a gourmet school of cooking and entertaining for ten years. In addition the witness has also given cooking demonstrations and led cooking tour groups to France, Italy and China. An article about her had been featured in *Bon Appetit* Magazine.

Ms. Roberts was familiar with Exhibit 1, having used such an item and instructed her students in the use of said item to lift fried foods from a deep fat fryer. In her opinion Exhibit 1 is a strainer or scoop. Articles such as Exhibit 4 are strainers or all-purpose tools, but not a spoon. A strainer takes solid particles of food out of liquid and allows the water or fat to drain from the food. The witness agreed with the definition contained in *Aluminum Housewares, infra,* and was of the opinion that Exhibit 1 did not meet the definition. According to the witness a spoon could not be used with a fryer because a spoon has a bowl and would lift out hot fat with the food. In addition, according to the witness, spoons do not have looped handles such as Exhibit 1, which generally keep the handle from getting overly hot as it would with a solid handle. Exhibit 1 would not be considered a slotted spoon since a slotted spoon has a bowl with small holes and a solid handle, all of which make it inappropriate for deep fat frying.

On cross-examination Ms. Roberts was read the definition from *Funk & Wagnall's New Standard Dictionary,* also cited in *Aluminum Housewares, infra.* The witness testified that Exhibit 1 does

not have a deep bowl and that scoops generally do not have slots. In addition, Ms. Roberts stated that if Exhibit 1 had a wood or plastic handle it would be extremely dangerous to use in deep fat since the wood would tend to burn and the plastic would tend to melt.

The sole witness called by defendant was Mr. Michael Pettite, a chief instructor and head of the Food Services Program at Pasadena City College since 1975. The definition from *Webster's Third New International Dictionary,* cited in *Aluminum Housewares, infra,* was read to the witness, and he agreed with the definition. He was familiar with the term slotted spoon, having observed them for sale in various stores and having used them at the college and at home. Slotted spoons, such as Exhibits C, D and E have shallow round or oval bowls with slots and can be used to lift food out of stocks or fryers or to mix, blend or prepare food. The witness in his opinion believed Exhibit 1 to be a slotted spoon. According to the witness a plastic handle would not melt as it would not be sitting in the liquid or fat for a long period of time. The witness indicated a plastic handle is not as likely to conduct heat.

Ms. Peterson was recalled and testified that Exhibit C would be inadequate to use in hot oil for several reasons. A utensil composed in part of nylon would melt in hot fat. The witness further testified that if left to lean against the side of the pan the handle would burn. In addition since the bowl is so small it would be dangerous to use in deep frying. She then pointed out that the metal looped handle of Exhibit 1 would not conduct heat as would the solid metal handle of Exhibit C.

Based upon the record as made and the pleadings filed herein, there is no dispute that the imported article is a hand tool which is chiefly used in the household or kitchen and is composed of a base metal. It is elementary in the field of Customs Jurisprudence that tariff terms are to be construed in accordance with their common meaning and commerical meaning which are presumed to be the same. *Ozen Sound Devices* v. *The United States,* 67 CCPA 67, C.A.D. 1246, 620 F.2d 880 (1980); *S.G.B. Steel Scaffolding and Shoring Co., Inc.* v. *United States,* 82 Cust. Ct. 197, C.D. 4802 (1979); *Continental Manufacturing Co., et al.* v. *United States,* 82 Cust. Ct. 187 C.D. 4800 (1979).

Neither party has attempted to establish a commercial designation which differs from the ordinary understanding of the term. Hence, the common meaning of the tariff term would apply. The common meaning of a tariff term is not a question of fact but one of law to be determined by the court, which may consult dictionaries, lexicons, etc. as an aid to its knowledge. See *Sturm, Customs Law and Administration,* § 52.6 (1983) edition). The testimony of witnesses as to the common meaning may be considered, but is merely advisory. *United States* v. *National Carloading Corp., et al.,* 36 CCPA 1, C.A.D. 388 (1948).

The term spoon was the subject of litigation in *Aluminum Housewares Co. Inc.* v. *United States,* 81 Cust. Ct. 24, C.D. 4760 (1978). The merchandise involved therein was measuring spoons, which the court held to fall within the meaning of the term spoons in 650.56, and in which the court cited the following definitions:

> *Webster's Third New International Dictionary of the English Language,* p. 2205 (1966) defines a "spoon" as:
> [A] usu. metal, plastic, or wooden eating or cooking implement consisting of a small oval or round shallow bowl with a handle—often used in combination [e.g., teaspoon]

and *Funk & Wagnalls New Standard Dictionay of the English Language,* p. 2349 (1956) defines the term "spoon" as:

> A utensil having a shallow ovoid bowl and a handle, used in preparing, serving, or eating food.

As employed in item 650.56 the term "spoons" is qualified, among other things, by the phrase "which are kitchen or tableware". *Webster's Third New International Dictionary of the English Language,* p. 1247 (1966) defines "kitchenware" as "hardware (as cutlery and cooking utensils) for kitchen use."

The Court further observed the term is palpably broad and stated:

> The common meaning of the term "spoon" is palpably broad, encompassing many articles whose identification as such is invariably qualified by reference to some specific function performed. Thus, a teaspoon is so named because it is used to stir sugar in tea. The same can be said with respect to *slotted* spoons, *mixing* spoons, *stirring* spoons, *mustard* spoons, *tablespoons, dessert* spoons, *grapefruit* spoons, *fruit* spoons, *sugar* spoons, *relish* spoons, *soup* spoons, *serving* spoons, *salad* spoons. And by the same token *measuring* spoons are so named because of their specific function of apportioning exact quantities. In fact, a mere reference to the term "spoon" without a prefix denoting function is meaningless in terms of identifying any particular kind of spoon. Obviously, therefore, variation in function between spoons cannot be the basis for denominating one article a spoon and another not a spoon, as plaintiff seems inclined to do. [P. 28.]

In view of the fact that the court has already determined the common meaning of the term spoon, the question presented herein is whether the imported article falls within the term. It is obvious that in *Aluminum Housewares* the measuring spoons fall within the defintion. As I discern the common meaning of a spoon, it must be a utensil or implement (1) with a small or shallow bowl, (2) which is ovoid or round, (3) has a handle, and (4) is used for eating, cooking or preparing food. While the imported article may be utilized in preparing food or as a cooking implement, it is not used for eating. The court is of the opinion that the imported article does

not meet the specifications of the definition heretofore adopted by the court and agreed to by all the witnesses in the instant case. The so-called lifter involved herein is not oval or round in shape but has a triangular shape approximately 4 inches wide as indicated below.

Defendant's attempt to relegate the involved item to a slotted spoon category, as indicated by defendant's exhibits C, D, and E, is to no avail. The above exhibits meet the specifications of having shallow round or oval bowls and are used for eating, preparing food, or cooking, whereas the involved merchandise conforms only in part to the specifications set forth.

In the field of Customs Jurisprudence it has often been stated that a sample is a potent witness. *Marshall Field & Co.* v. *United States,* 45 CCPA 72, C.A.D. 676 (1958). Based upon ocular inspection of Exhibit 1 together with the record the court is satisfied that the imported merchandise is not a spoon as set forth in *Aluminum Housewares, supra.*

In conjunction with the fact that the court is of the opinion that the imported merchandise is not a spoon, defendant's answer to the first amended complaint admits the articles involved have base metal handles, are hand tools, are household and kitchen utensils. In addition the further admission that plaintiff has met all statutory requirements for GSP treatment, establishes plaintiff's claim (see Answer, paragraphs 6 to 8 and 11 to 15).

In view of the foregoing the claim of plaintiff for entry free of duty under Item A651.47, TSUS, is sustained. All other claims are overruled.

Judgment will be entered accordingly.