59 CCPA

**E. GREEN & SON (NEW YORK), INC.,**
**Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5422.**

United States Court of Customs and Patent Appeals.

Nov. 18, 1971.

Sharretts, Paley, Carter & Blauvelt, New York City, attorneys of record, for appellant. Charles P. Deem, New York City, of counsel.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Robert Blanc, New York City, for the United States.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

ALMOND, Judge.

This is an appeal from the decision and judgment of the United States Customs Court, Second Division,[1] overruling appellant's protest and holding that the imported merchandise had been properly classified by the collector of customs. The merchandise, invoiced as "Type 25 Economiser Pipes 12 Ft. long," was classified under paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108, as other articles in chief value of iron, not specially provided for, and assessed with duty at the rate of 19 per centum ad valorem.

Appellant claims that the imported merchandise is properly classifiable either as cast-iron pipe under paragraph 327 at ten per centum ad valorem, or as iron tubes under paragraph 328 at 10½ per centum ad valorem, or as advanced castings of iron under paragraph 327 at five per centum ad valorem.

The statutes involved are:

*Classified under:*

Paragraph 397, Tariff Act of 1930, as modified by T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \*

Composed wholly or in chief value of iron \* \* \*, but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \* \* \*

Not wholly or in chief value of tin or tin plate:

\* \* \* \* \* \*

Other, composed wholly or in chief value of iron, \* \* \* (except \* \* \*) ........19% ad val.

*Claimed under:*

Paragraph 327, Tariff Act of 1930, as modified by T.D. 51802:

Cast-iron pipe of every description \* \* \* ..........10% ad val.

Paragraph 327, Tariff Act of 1930, as modified by T.D. 52739:

\* \* \* castings \* \* \*, including all castings of iron or cast-iron plates which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts .................... 5% ad val.

Paragraph 328, Tariff Act of 1930, as modified by T.D. 54108:

Finished or unfinished iron or steel tubes not specially provided for:

\* \* \* \* \* \*

Other ..................10½% ad val.

The Customs Court, in our view of the matter, made a fair and comprehensive statement of the relevant facts adduced of record. We adopt that statement in its essence. The court found:

The merchandise is composed of cast iron, and consists basically of a tube with fins cast in one piece. Internally, the tube portion is circular, while externally it is approximately diamond shaped with projecting rectangular fins spaced about every inch. On the extreme ends of the articles there are flanges with six drilled holes. Additionally, there are supporting flanges on the tops and bottoms approximately five inches from the extreme ends of the articles.

The end flanges are machined flat, so that a pressure tight seal can be made between the end of the article and whatever is connected to it. The support flanges are also machined. Plaintiff imported the merchandise as replacement parts for low-level and feed-water economizers.

---

1. 64 Cust.Ct. 241, C.D. 3985 (1970), rehearing denied, 64 Cust.Ct. 573, C.D. 4038 (1970).

It appears from the incorporated record that a low-level economizer is a heat exchanging device designed for use in connection with the boilers in electric power plants. Such economizer functions to recover low-grade thermo-energy from the products of combustion, and transfer this energy to the air-stream that is being fed into the boilers. The low-level economizer is installed in addition to a conventional (feed-water) economizer and is independent of the latter.

The feed-water economizer serves to raise the temperature of feed water being fed to the steam generating unit. Unlike a low-level economizer, the feed-water economizer contains no valves, pumps, or other moving parts.

The function of the imported articles is to convey water through the flue gas stream, which is transmitted to the chimney from a power boiler. The articles pick up the heat, conduct it to the water which is flowing through it, and thereupon the heated water "goes into the boiler to produce steam" \* \* \*. The fins serve to extend the heating surface of the articles, thereby collecting and transferring more heat to the tube portion and the water flowing through it \* \* \*.

Appellant concedes that the imported articles are describable as manufactures of iron (as classified); however, if they are also describable by one or more of the other tariff provisions in issue, the rule of relative specificity will apply. The Customs Court considered together two of these asserted tariff provisions, i. e., the provision in para. 327 for cast-iron pipes and that in para. 328 for iron tubes. We will do likewise since the issue in regard to both of these provisions is whether the imported economizer tubes are "more than" mere pipes and tubes.

Only the most general of rules can be ascertained from the previous decisions dealing with the "more than" doctrine, and it appears that each case

must in the final analysis be determined on its own facts. See United Carr Fastener Corp. v. United States, 54 CCPA 89, C.A.D. 913 (1967), and the cases cited therein. In order to determine if an article is more than that provided for in a particular tariff provision, it is necessary to ascertain the common meaning of the tariff provision and compare it with the merchandise in issue. It is well established that in determining the common meaning of a term or word used in a tariff provision, court decisions, dictionary definitions, and other lexicographical authorities may be considered.

The Customs Court in this case took into consideration not only dictionary definitions, which generally define pipes and tubes as long hollow cylinders used for conveying liquids or gases, but also the 1929 Summary of Tariff Information. The court stated in its opinion below:

Significantly, the provisions of paragraphs 327 and 328 of the Tariff Act of 1930, under consideration in this case, were taken verbatim from the identically numbered paragraphs of the 1922 act.

As respects "cast-iron pipe" classifiable under paragraph 327 of the Tariff Act of 1922, the Summary states in part (schedule 3, Metals and Manufacturers of, page 694):

Cast-Iron Pipe

Description and uses.—Cast-iron pipes are long hollow cylinders generally with bell and spigot joints which are sealed with lead and hemp when the pipes are laid. The diameter ranges from 2 to 84 inches and standard lengths are 12 and 16 feet.

\* \* \* \* \* \*

And as respects paragraph 328, the 1929 Summary states in part (schedule 3, pages 698-699):

Tubes, Pipes, and Tanks

Description and uses.—Paragraph 328 covers tubes, pipes, flues, or stays;

rigid tubes for electrical conduits; ball-bearing tubes for manufacturing ball-bearings; tubes of iron or steel not specifically provided for; cylindrical welded furnaces; and tanks, drums, or vessels. It does not include cast-iron pipe.

Tubes may be seamless or welded.

\* \* \*

After comparing the imported articles with the definitions of pipe and tube which it ascertained from these authorities, the Customs Court concluded:

In light of the dictionary definitions relied upon by plaintiff and the above-quoted materials from the 1929 Summary of Tariff Information, we have determined that the merchandise is not a pipe or tube within the common meaning of those terms, and is not within the class of articles intended to be covered in paragraph 327 or 328. Plaintiff's exhibit 1 is a potent witness, and it is plainly more than a "long hollow cylinder."

We, too, have thoroughly examined the record, exhibits, and authorities relied upon by the respective parties, and we are of the view that the lower court did not err in its conclusion. We are particularly impressed by exhibit 1, which is a section of an economizer tube of the type imported. It is hard to see how such an article can be considered a "pipe" or "tube" of any description. It does not look like a pipe or tube in its shape and form, and, more importantly, its major function is not that of a pipe or tube. That is, the record establishes that while the economizer tubes do convey water, their primary function is to heat or cool the water flowing through their interior. The finned design of the economizer tubes was created solely to accomplish this function, and thus represents something more than a pipe or tube as those terms are commonly defined.

We also agree with the Customs Court that Baker Ice Machine Co., Inc. v. United States, 4 Cust.Ct. 22, C.D. 274 (1940), wherein steel pipes with attached aluminum fins were found to be more than mere pipes, is supportive of the conclusion reached in this regard.

In consideration of the other provision which appellant urges is applicable, i. e., that providing for advanced castings of iron (para. 327), the Customs Court held that the economizer tubes were excluded therefrom since they are parts of made-up articles, viz., economizers. Appellant contends, on the other hand, that the imported articles are not parts because they are not "dedicated" to use in a specified article. In support of this contention, appellant relies on the case of The Green Fuel Economizer Co., Inc. v. United States, 57 Cust.Ct. 402, C.D. 2829 (1966), the record of which was incorporated herein. There the Customs Court found that economizer tubes of the type imported are not parts of machines because they could be used both in low-level economizers (which are machines) and in feed-water economizers (which are not machines).

If the "dedication" test, as enunciated in United States v. American Bead Co., 9 Ct.Cust.Appls. 27, T.D. 37873 (1918), and United States v. Ford Motor Co., 51 CCPA 22, C.A.D. 831 (1963), were fully applicable to the provision of para. 327 in issue, we would have to agree with appellant since the imported tubes may be used in two different types of economizers which would be considered different specific classes and kinds of manufacture. However, we do not think this type of "dedication" test is applicable to the provision in question.

We have reviewed all of the cases involving the "dedication" test which have been cited by the respective parties. We have also, on our own initiative, looked at a number of other decisions which

discuss the issue. Almost all of these cases involved the question of whether the imported merchandise was a "part" of a specified article as provided for in a particular tariff provision. As the Customs Court and appellee point out, the issue here is whether the imported economizer tubes are "parts" of made-up articles in general within the exclusionary provision of para. 327. As we read that provision, merchandise is still to be considered parts of made-up articles even though dedicated to use in more than one class or kind of manufacture as long as these classes and kinds of manufacture are themselves made-up articles. In the present instance, it is clear that both low-level and feed-water economizers are "made-up articles," that the imported tubes are "parts thereof," and, therefore, that the tubes cannot be classified under this provision of para. 327.

Since appellant agrees that the imported economizer tubes are describable as manufactures of iron (as classified), and since we agree with the Customs Court that none of the alleged alternative provisions of the Tariff Act are appropriate, the classification must stand. Accordingly, we *affirm* the decision and judgment of the Customs Court.

Affirmed.

LANE, Judge, dissenting, with whom WORLEY, Chief Judge, joins.

I dissent from the opinion of the majority since I cannot agree that the economizer pipes here involved are "more than" pipes. Each is, in my view, a species of "cast-iron pipe of every description."

I agree with the majority that in a broad sense a basic approach to the resolution of the "more than" issue in a particular case is "to ascertain the common meaning of the tariff provision and compare it with the merchandise in issue." Having done so I am convinced that no significant difference can be found such as to categorize an economizer pipe as something beyond the bounds of that which is commonly regarded as pipe. Paragraph 327 of the Tariff Act of 1930, claimed by appellant to be the proper classification for these articles, expressly provides for "cast-iron pipe *of every description.*" (Emphasis added.) This conveys the same idea as the long-standing principle that an article named in a tariff provision without limitation includes all forms of the article in the absence of a showing of legislative intent to the contrary. Nootka Packing Co. et al. v. United States, 22 CCPA 464, 466, 470 (1935); Smillie & Co. v. United States, 11 Ct.Cust.App. 199, 201 (1921). A mere modification in design by itself does not, in my opinion, change the status of the economizer pipe as a form of pipe.

The error in the reasoning of the majority is the concept that the imported pipes perform two functions by virtue of their design—conveyance of water and heating the water—the former being merely ancillary to the latter which is deemed to be the "primary" function. The problem with premising the result on this concept is that the fins, which form the distinction in design over a conventional pipe, do not create any new function. Heat transfer could be effected by using an unextended or plain pipe.

Mr. Gunther, representative and distributor for the manufacturer of the economizer pipes, testified at trial as follows:

Q. Would you please briefly for the court describe the actual function of the type 25 economiser tube when it is used in a feed water economizer or low water economizer, what does it actually do? A. The type 25 tube conveys the water through the flue gas stream which is going to the chimney from a power boiler. This tube picks up the heat and conducts it to the water which is flowing through the tube and this heated water then goes into the boiler to produce steam.

It therefore appears that all that is required to effect heat transfer is the conveyance of water through a conduit composed of a heat-conducting material. The fins increase the surface area of the heat-conducting material and thereby admittedly enhance the efficiency of heat transfer. However, this does not endow the merchandise with the capability of performing a new or different function. An improvement of this type stands on the same footing as the use of a different pipe material, *e. g.*, one which is a better heat conductor than cast-iron, or a thinner pipe. Each of these expedients tends to improve heat transfer but fails to alter the character of a pipe.

The "more than" doctrine, as it might be termed, is not a clear-cut rule and the majority may be a prophet in its skepticism toward the possibility of determining reasonably certain contours by which to define the doctrine. It is difficult to extract meaningful principles from prior cases in which this court or the Customs Court has been faced with the contention that the merchandise at bar is more than an article specifically provided for in the Tariff Schedules. However, I would not draw a conclusion too hastily on the design of a specific article. The article may indeed be a "potent witness," but much like all other witnesses, its appearance may be deceptive testimony.

I am not persuaded by the fact that an economizer pipe looks different from a pipe as the layman normally conceives of one. For all its structure, the economizer pipe does not permit the user to obtain disparate functions which are not obtainable in some degree with ordinary pipe.

I would hold that the Customs Court erred in rejecting the importer's claim for classification under paragraph 327, and that such classification would preclude the Collector's classification under paragraph 397 which is premised on the lack of special provision elsewhere. I would *reverse* the decision and judgment of the Customs Court.