60 CCPA

## The UNITED STATES, Appellant,

v.

## ACEC ELECTRIC CORPORATION, Appellee.

### No. 5475, C.A.D. 1091.

United States Court of Customs
and Patent Appeals.
March 8, 1973.

———◆———

Harlington Wood, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Patrick D. Gill, New York City, for the United States.

Siegel, Mandell & Davidson, New York City, attorneys of record, for appellee; Allan H. Kamnitz, Brian S. Goldstein, New York City, of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and CLARK, Justice, (Ret.), sitting by designation.

CLARK, Justice.*

This is an appeal from the decision and judgment of the United States Customs Court, Second Division,[1] sustaining appellee's protest against the assessment of duty at 10 percent ad valorem on merchandise described as a clutch motor used on industrial sewing machines and classified under item 672.25 of the Tariff Schedules of the United States (TSUS) as "Other" parts of sewing machines. Appellee successfully claimed that the merchandise is classifiable under item 682.40, TSUS, as motors of over $\frac{1}{10}$ but under 200 horsepower and dutiable at 8.5 percent ad valorem. We reverse.

---

* Tom C. Clark, Associate Justice of the United States Supreme Court (Ret.), sitting by special designation.

1. 66 Cust.Ct. 390, C.D. 4220 (1971), reh. den. July 13, 1971.

The pertinent portions of the statutes involved are:

Tariff Schedules of the United States:

General Headnotes and Rules of Interpretation:

\*    \*    \*    \*    \*    \*

10.  *General Interpretative Rules.* For the purposes of these schedules—

\*    \*    \*    \*    \*    \*

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

Schedule 6, Part 4:

*Part 4 headnotes:*

1.  This part does not cover—

\*    \*    \*    \*    \*    \*

(vi) articles and parts of articles specifically provided for elsewhere in the schedules.

*Classified under:*

Schedule 6, Part 4, Subpart E: Sewing machines and parts thereof,  .  .  .:

\*    \*    \*    \*    \*    \*

Parts:

\*    \*    \*    \*    \*    \*

Item 672.25  Other ... 10% ad val.

*Claimed under:*

Schedule 6, Part 5:

Generators, motors, motor-generators,  .  .  .:

\*    \*    \*    \*    \*    \*

Motors:

\*    \*    \*    \*    \*    \*

Item 682.40  Of over 1/10 but under 200 horsepower .......... 8.5% ad val.

The imported item is an electric motor with flywheel to which is securely affixed a clutch mechanism. Together the elements form a single operating unit. In operation the motor runs continuously while the clutch mechanism allows a drive pulley to be engaged and disengaged. The parties do not dispute that the sole use to which the assemblage is put is as the power source for industrial sewing machines. However, appellee contends that the unit is merely a special purpose motor and that General Interpretative Rule 10(ij) dictates that the motor be classified under item 682.40, supra, notwithstanding the fact that it can properly be considered to be a part of a sewing machine. Appellant, on the other hand, insists that the addition of the clutch mechanism to the electric motor makes it more than a motor and that classification under item 672.25, supra, as part of a sewing machine would be proper.

We believe that the merchandise is more than a motor and should be classified under item 672.25. We believe United States v. A. W. Fenton Co., 49 C.C.P.A. 45, C.A.D. 794 (1962) and Servo-Tek Products Co. v. United States, 416 F.2d 1398, 57 C.C.P.A. 13, C.A.D. 969 (1969) are controlling here.

In *Fenton* the imported article, which was the principal part of an electric floor polisher, was an electric motor with two drive shafts that propel the brushes of the polisher. The frame of the polisher maintains the essential parts of the motor in assembled relationship and supports the gearing assemblies. It also provides a skirt that surrounds the brushes in the assembled machine. The handle of the polisher is attachable and held to the frame by a pair of built-in lugs. This court found:

The article does include a motor. It also includes gears and it clearly is designed for a special purpose. But the additional features it includes do more than make it a special type of motor. They dedicate it to one particular use as a part of a floor polisher. Since it is more than a motor, it is not properly classifiable as a motor for tariff purposes.

In *Servo-Tek* the imported article consisted solely of an electric motor with an attached gear train which converted the high armature speed (3600 rpm) to a usable speed at the output shaft (18, 40 or 90 rpm) and increased the torque. It had no elements unrelated to the function of the motor which was to provide

power. In this respect, the importation differed from that in *Fenton* which included the specially designed frame, an element unrelated to the transmission of mechanical energy. Nevertheless, it was concluded that the Servo-Tek motor and gear train were more than a motor as they made up "a unitary piece of composite machinery which contains a motor as an element and a gear train speed-reduced as another element."

The Customs Court distinguished these two cases on the basis that:

\* \* \* in the sewing machine trade which services industrial type sewing machines, a motor is considered to be one of the type involved herein. While there is also a continuous running motor which is used with machines having a built-in clutch, the purchaser would have to specify his need for a continuous running motor. Therefore, in the commerce and industry involved herein, the imported clutch motor is considered a motor. In addition the clutch does not affect the speed or torque of the mechnical output. There are no features, which are nonmechanical, which form part of the article to which it is to supply power. The design of the case of the motor is such as to house the clutch which is fully integrated with the motor. The removal of the clutch portion, by virtue of the design, would leave the motor useless. It is in effect a special purpose motor but nonetheless a motor.

It is true that *Fenton* does suggest that a "special type" motor might still be classified as a motor. However, here the article imported has two elements forming a unitary piece of composite machinery, i. e., a motor and a clutch. If the article in *Fenton* was more than a motor, we believe the one here would also be. Furthermore, this case is on all fours with *Servo-Tek* where the motor and the gear train were a unitary piece of machinery.

Although appellee's own witness described the imported article as an electric motor to which is coupled a clutch brake mechanism, it makes much of the fact that, unlike the gear train speed-reducer of *Servo-Tek*, the clutch mechanism here does not affect the speed or torque of the motor. This is a distinction without a difference. In fact, the similarities between the situation here and that of *Servo-Tek* loom larger than the distinctions. In each case the imported article comprises what is concededly an electric motor with means which allow its output to be more efficiently harnessed. In each case the motor and attachment form a composite unit.

Nor do we think that the Customs Court's heavy reliance on the testimony that the article here was regarded as "a sewing machine motor" in that trade is of any relevance. In our view, this tag is too parochial. To carry any weight with us, it would have to be shown that commercial circles in general so regarded clutch motors and, in effect, that Congress adopted this view when it enacted the TSUS. To view it otherwise would invite classification on an industry-by-industry basis which would lead to much confusion.

In this case we are convinced that the record does not offer evidence of sufficient probative value to support the lower court's decision in view of our previous holdings. In reaching this decision, we have considered appellee's argument and the Customs Court's opinion insofar as both rely upon the Explanatory Notes to the Brussels Nomenclature, Section XVI, heading 85.01, to support their conclusion that the term "motors" would include a clutch motor. However, those notes do not dictate a different result since we believe that item 682.40 was intended to encompass that which was regarded as a motor under the Tariff Act of 1930. Under the Act, that which might be regarded as a motor (under paragraph 353) could still be classified elsewhere as a part of some other machine. It was the intent of the TSUS to change this situation and allow classification under an *eo nomine* provision even though there exists a competing parts

provision.[2] We do not see that a broader definition of "motor" was indicated than that applied in the *Fenton* and *Servo-Tek* cases decided under the 1930 Act. Here we have concluded that classification was not proper under item 682.40 because a clutch motor is more than a motor and hence not a motor for tariff purposes.

█ We therefore conclude that the instant article is properly classifiable under item 672.25. Accordingly, the judgment is reversed.

Reversed.

---

2. See Tariff Commission, Tariff Classification Study, Explanatory Notes to Schedule 6, Part 5 at p. 303 (1960).