**SUMITOMO CORPORATION OF AMERICA, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 92–03–00165.
Slip Op. 94–88.**

United States Court of International Trade.

June 2, 1994.

Bellsey and Baker, Steven W. Baker, San Francisco, CA, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen. of the U.S., Joseph I. Liebman, Attorney-in-Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Mark S. Sochaczewsky, Laura R. Siegel, Atty., U.S. Customs Service, Washington, DC, of counsel, for defendant.

## Opinion

CARMAN, Judge:

Plaintiff, Sumitomo Corporation of America, challenges the classification and liquidation of its imported merchandise pursuant to section 515 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515(a) (1988). This Court has jurisdiction under 28 U.S.C. § 1581(a) (1988) and, for the reasons which follow, enters judgment for plaintiff.

## I. Background

### A. *The Merchandise*

The merchandise at issue in this case consists of voice coil positioning devices (VCPDs) manufactured for use in computer hard magnetic disk drives. A VCPD is a component of a computer disk memory unit. Aff. of Marlon Feiger (Feiger Aff.) at ¶ 7. Such units use "a combination of mechanical and electronic components to permit fast access to large quantities of data by the central processing unit." *Id.*

Among the components found in a computer disk memory unit are read/write heads, which write data onto and retrieve data from magnetic memory media, such as computer disks. *Id.;* Aff. of Ashok K. Desai (Desai Aff.) at ¶ 6. The read/write heads function in conjunction with actuators,[1] which in turn are part of a positioning system that moves the heads to precise locations in order to access a particular track on the computer disk. Feiger Aff. at ¶ 7; Desai Aff. at ¶ 6. The disk itself sits "mounted on a precision spindle and rotates at high speed." Feiger Aff. at ¶ 7.

VCPDs are one type of actuator used in the read/write head positioning system. *Id.* at ¶ 8; Desai Aff. at ¶ 6. "VCPDs are linear or rotary actuators that are driven by voice coil motors ... in conjunction with servo systems which sense position information from the disks." Desai Aff. at ¶ 7. The voice coil motor within the VCPD "consists of a frame in which sit a copper covered core, magnets on either side, and a wire-wound coil and arm attached to a fixed fulcrum." Decl. of Paul Doemeny (Doemeny Decl.) at ¶ 7. The copper core and magnets create a magnetic field around the core in which lies the coil. Desai Aff. at ¶ 14. Varying the electricity supplied to the coil exerts force on the coil, causing it to move back and forth. *See id.* at ¶¶ 7, 14; Feiger Aff. at ¶ 9. The coil's motion, in turn, causes the VCPD's arm to pivot on the fulcrum, thereby setting in motion a carriage arm to which the read/write heads are attached. *See* Desai Aff. at ¶ 15; Feiger Aff. at ¶¶ 16–18. The motion of the carriage arm thus prompts the read/write heads to interact with the magnetic memory media used in the computer. *See* Desai Aff. at ¶ 15.

### B. *Statutory Provisions*

Plaintiff relies on the following provisions of the Tariff Schedules of the United States (TSUS):

1. <u>Schedule 6, Part 4, Subpart G (1987)</u>:
   Item 676.30 Office machines not specially provided for....

   . . . .
   Parts of the foregoing:
   . . . .

---

1. The term "actuator" encompasses "any of various electric, hydraulic, or pneumatic mechanisms by means of which something is moved or controlled indirectly instead of by hand...." Webster's Third New International Dictionary 22 (1st ed. 1986).

Item 676.54.55    Parts of automatic data-processing machines and units thereof, other than parts incorporating a cathode ray tube....

    ....

    Other:

    ....

    Other....

2. General Headnotes and Rules of Interpretation (1986 & 1987):
    10. General Interpretative Rules: For the purposes of these schedules—
    ....

    (ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.[2]

Defendant relies on the following TSUS provision:

Schedule 6, Part 5 (1986 & 1987):
    Generators, motors, motor-generators, converters (rotary or static), transformers, rectifiers and rectifying apparatus, and inductors;  all the foregoing which are electrical goods, and parts thereof:

    Motors:

    Of under 1/40 horsepower:

    ....

Item 682.25    Other....

    ....

    Other....

In addition, the following TSUS provision is relevant to the Court's discussion:

Schedule 6, Part 4, Subpart G (1986):
Item 676.30   Office machines not specially provided for....

    ....

    Parts of the foregoing:

    ....

Item 676.52    Other....

    ....

    Parts of computers and automatic data-processing machines and units thereof:

    ....

    Other....[3]

---

### C. *Customs' Classification*

The United States Customs Service (Customs) classified the subject merchandise under item 682.25, TSUS.  Item 682.25 applies to "[g]enerators, motors, motor-generators, converters (rotary or static), transformers, rectifiers and rectifying apparatus, and inductors;  all the foregoing which are electrical goods, and parts thereof:  .... Motors:

Of under 1/40 horsepower:  ....   Other....  Other...." Pursuant to this item, Customs imposed duties totalling 7.3% or 6.6% *ad valorem*, depending on date of entry.

Plaintiff filed timely protests pursuant to 19 U.S.C. § 1514(a) (1988) to contest Customs' classification.  Customs subsequently denied the protests under 19 U.S.C. § 1515 (1988) and, after having paid all liquidated

---

**2.**  Defendant also relies on General Interpretative Rule 10(ij).

**3.**  The language contained in item 676.52, TSUS (1986), is analogous to that in item 676.54.55, TSUS (1987), the provision upon which plaintiff relies.  For tariff payment purposes, however, the 1987 provision provides for duty-free treat-

ment and the 1986 provisions imposes duties of 4.1 percent *ad valorem*.  Nevertheless, because the descriptive language in both provisions is substantially similar and for purposes of clarity, the Court will limit its discussion to the 1987 provision, item 676.54.55.

duties, plaintiff commenced this action within the time allowed by law. This Court has jurisdiction under 28 U.S.C. § 1581(a) (1988).

## II. CONTENTIONS OF THE PARTIES

### A. *Plaintiff*

Plaintiff advances several arguments in support of its position. First, plaintiff contends the parties' dispute only raises questions of law that the Court may resolve by summary judgment. Pl.'s Br. at 5–6. Specifically, plaintiff claims the Court need only assess the scope of the tariff item under which Customs classified the subject merchandise and the applicability of the item upon which plaintiff relies. *Id.* at 6. Plaintiff also argues the Court may properly dispose of the parties' dispute by summary judgment because defendant "does not contest any of the material facts set forth by plaintiff except for a claimed distinction between 'linear' and 'rotary' voice coil devices." Pl.'s Reply Br. at 2. Plaintiff further indicates summary judgment is appropriate as defendant does not question the fact noted by plaintiff that VCPDs operate differently than other rotating shaft power devices. *Id.* at 2–3. In short, plaintiff contends defendant merely advances "arguments about the implications of the facts, and not the facts themselves [, and therefore does] not actually raise any issues of fact." *Id.* at 4.

Second, plaintiff asserts the subject merchandise does not fit within the judicially-determined meaning of the term "motors" under the TSUS. Pl.'s Br. at 6–12. In essence, plaintiff urges this definition only applies to those devices which transform electrical energy into mechanical energy through the use of a *rotating* shaft. *Id.* According to plaintiff, a VCPD "is not a rotating device [and] does not produce rotating shaft power" and, therefore, does not satisfy the definition of the term "motor" as used in the TSUS. *See id.* at 9. Instead, argues plaintiff, the VCPD is a linear motor that produces a back and forth motion. *Id.* While plaintiff acknowledges the VCPDs produce a very small rotation in the pivot arm of

less than 20° of an arc, plaintiff maintains the actual motion of the coil is linear and thus precludes the merchandise from being a "motor" under the TSUS. *Id.*

Finally, plaintiff contends the "more than" doctrine requires Customs to classify the merchandise under item 676.54.55. *Id.* at 12–17. Plaintiff claims the "more than" doctrine precludes Customs from classifying an article under an *eo nomine* provision for the article if the article is "more than" the items described by the provision.[4] *See id.* at 12–13. Plaintiff argues the VCPD has various additional features that are not integrated with the merchandise's linear motor and that harness the motor's power for a specialized purpose. *Id.* at 16. Specifically, plaintiff notes the following about the merchandise's components: (1) the VCPD's "frame permits the precise alignment required for operation[;]" (2) "[t]he arm transfers the motion of the coil to the heads[;]" and (3) "the pivoted bearing amplifies [the heads'] displacement." *Id.* Plaintiff maintains these features make the subject merchandise "more than" an electrical motor of "under 1/40 horsepower" under item 682.25. *Id.* at 12, 16–17. Finally, plaintiff emphasizes the VCPDs are "essential components in hard magnetic disk drives" and have no other function apart from their operation as positioning devices in the disk drives. *Id.* at 17.

### B. *Defendant*

Defendant opposes plaintiff's motion for summary judgment on four grounds. First, defendant argues two genuine issues of material fact exist in this case which preclude summary judgment: (1) whether a VCPD is a rotary motor and (2) whether a VCPD is "more than" a rotary motor. *See* Def.'s Statement of Material Facts as to Which There Exist Genuine Issues To Be Tried; Def.'s Br. at 6–7. Second, with respect to plaintiff's argument that the well-established definition of rotary motors excludes the VCPDs, defendant claims the argument is irrelevant because it assumes the merchandise is a linear motor when, in fact, Customs

---

**4.** "An *eo nomine* designation is one which describes a commodity by a specific name, usually one well known to commerce." RUTH F. STURM,

CUSTOMS .LAW AND ADMINISTRATION, § 53.2, at 3 (3d ed. 1991) (citing *United States v. Bruckmann*, 65 CCPA 90, C.A.D. 1211, 582 F.2d 622 (1978)).

has determined the merchandise is a *rotary* motor. Def.'s Br. at 6–7. Third, defendant asserts the VCPDs are not "more than" motors because their sole function is to transform electric energy into mechanical energy and any additional features that the merchandise may have are integral to the motor's functioning. *Id.* at 7–8. Finally, defendant urges the VCPDs are not classifiable under item 676.54.55 as plaintiff claims because the *eo nomine* "motor" provision in item 682.25 specially provides for the merchandise within the meaning of General Interpretative Rule 10(ij). *Id.* at 8.

## III. DISCUSSION

### A. *Presumption of Correctness*

■ As in all customs cases, a statutory presumption of correctness attaches to classifications by the Customs Service and the party challenging the classification has the burden of overcoming this presumption. 28 U.S.C. § 2639(a)(1) (1988). To determine whether an importer has overcome the statutory presumption, the Court must consider whether "the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878 (1984).

### B. *Summary Judgment*

This Court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). The moving party

> bears the burden of establishing that the material facts are not in dispute and entitle it to judgment as a matter of law.... After the moving party has clearly established its case, the duty to go forward shifts to the party opposing the motion to produce evidence that places material facts in dispute.

*Balboa Ins. Co. v. United States,* 775 F.2d 1158, 1163 (Fed.Cir.1985) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct.

1598, 1609–10, 26 L.Ed.2d 142 (1970)) (other citation omitted). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, a genuine issue as to a material fact can only arise where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2510–11. The Court will address in turn the separate questions of whether the parties' dispute raises a "genuine issue of material fact" and whether plaintiff "is entitled to a judgment as a matter of law."

#### 1. Genuine Issue of Material Fact

■ The Court first considers whether the parties' dispute raises a "genuine issue of material fact" that precludes summary judgment. The substantive law that applies to this case, of course, appears in the TSUS and the various court decisions that have interpreted the relevant TSUS provisions. If the materials now before the Court do not raise a question as to the proper application of these authorities to the subject merchandise, the Court must conclude no genuine issue of material fact exists in this action. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

In this case, plaintiff claims VCPDs are properly classifiable under item 676.54.55 and has submitted various materials to support its claim. Among the materials that plaintiff has submitted are affidavits, excerpts from technical publications, schematic drawings, trade literature, and dictionary definitions, all of which address the functioning of VCPDs. *See, e.g.,* Feiger Aff. at 1–4, Exs. A–D; Desai Aff. at 1–4, Exs. B–E; Desai Supp.Aff. at 1–2; Desai Second Supp. Aff. at 1–2, Ex. A. As suggested by the Court's background discussion above, plaintiff's supporting materials clearly illustrate the subject merchandise's design and application: the VCPD's coil moves back and forth as it receives electricity, thereby caus-

ing the VCPD's arm to pivot on its fulcrum; the pivoting action of the arm activates a carriage arm which, in turn, prompts the read/write heads to interact with the magnetic memory media used in the computer. *See* Desai Aff. at ¶ 15; Feiger Aff. at ¶¶ 16–18. Although defendant does not dispute the foregoing characterization of the VCPDs design and function, defendant nevertheless asserts questions of fact exist as to whether VCPDs are rotary motors or "more than" rotary motors. *See* Def.'s Statement of Material Facts as to Which There Exist Genuine Issues To Be Tried; Def.'s Br. at 6–7.

Without deciding the issue, the Court will assume the VCPDs *are* rotary motors for the purposes of this discussion and proceed to consider whether a genuine issue of fact exists as to whether a VCPD is "more than" a rotary motor. At the outset, the Court notes the application of the "more than" doctrine depends on the particular facts of a given case. *See E. Green & Son, Inc. v. United States*, 59 CCPA 31, 34, C.A.D. 1032, 450 F.2d 1396, 1398 (1971) ("Only the most general of rules can be ascertained from the previous decisions dealing with the 'more than' doctrine, and it appears that each case must in the final analysis be determined on its own facts."). "In order to determine if an article is more than that provided for in a particular tariff provision, it is necessary to ascertain the common meaning of the tariff provision and compare it with the merchandise in issue." *Id.* at 34, 450 F.2d at 1398. Ultimately, "a finding ... by the court ... that an article is 'more than' that described by the tariff provision signifies, in effect, that the provision cannot be interpreted as covering that article." *Phone–Mate Inc. v. United States*, 12 CIT 575, 581, 690 F.Supp. 1048, 1053 (1988), *aff'd*, 7 Fed.Cir. (T) 40, 867 F.2d 1404 (1989) (citing *Englishtown Corp. v. United States*, 64 CCPA 84, 87, C.A.D. 1187, 553 F.2d 1258, 1260 (1977)).

As instructed by the foregoing cases, the Court begins its analysis by considering the common meaning of the tariff provision upon which defendant relies, item 682.25, TSUS.[5]

As defendant bases its classification of the VCPDs on its determination that the VCPDs are electric motors within the meaning of item 682.25, the Court limits its inquiry to ascertaining the common meaning of the term "electric motor." The Court's inquiry is a limited one, however, because the Court of Customs and Patent Appeals (CCPA) previously examined the meaning of the term at issue. *See United States v. Acec Elec. Corp.*, 60 CCPA 113, 117, C.A.D. 1091, 474 F.2d 1009, 1011–12 (1973); *United States v. A.W. Fenton Co.*, 49 CCPA 45, 47–48, C.A.D. 794, 1962 WL 9340 (1962). In *A.W. Fenton*, the CCPA indicated the following definition of "electric motors" applied to the Tariff Act of 1930:

> A rotating machine which transforms electrical energy into mechanical energy. It consists of two principal parts: a field-magnet winding or a distributed-stator winding producing a magnetic field, and a rotating armature or rotor in whose conductors flow currents which are acted upon by the magnetic field and cause rotation.

49 CCPA at 47–48 (citation omitted). The appellate court subsequently reaffirmed the application of this definition to the TSUS. *Acec Elec.*, 60 CCPA at 117, 474 F.2d at 1011–12.

In *A.W. Fenton*, the CCPA addressed a problem similar to that involved in the instant case. The *A.W. Fenton* court reviewed the classification of an article described as a "Hoover Electric Motor and Gear Assemblies." 49 CCPA at 47. The article's components included "an armature, field assembly, commutator, carbon brushes, and bearings, along with a two-piece frame which holds those parts together as a unit." *Id.* The court described the article's design as follows:

> Each end of the armature shaft is provided with a worm adapted to drive a worm gear. Such a gear, mounted on a drive shaft, is held in driven connection with each of the worms by the frame. The two drive shafts

---

5. As noted above, item 682.25 applies to "[g]enerators, motors, motor-generators, converters (rotary or static), transformers, rectifiers and rectifying apparatus, and inductors; all the forego-

ing which are electrical goods, and parts thereof: .... Motors: Of under 1/40 horsepower: .... Other.... Other...."

are disposed in spaced parallel relationship, perpendicular to armature shaft.

*Id.* The court subsequently observed "[t]hat the instant article contains the essential elements of a motor there can be no doubt, but it is equally clear that it includes features not essential to its function as a motor." *Id.* at 48. Specifically, the court pointed to, among other things, the structural support supplied by the drive shafts to the polishing brushes, and the support and protection provided by the frame to the gearing assemblies and brushes, respectively. *Id.* The court further underscored the fact that while the article "clearly is designed for a special purpose . . . [,] the additional features it includes do more than make it a special type of motor[—t]hey dedicate it to one particular use as part of floor polisher." *Id.* at 49. The court thereafter concluded the article "is more than a motor [and therefore] is not properly classifiable as a motor for tariff purposes." *Id.*

With this background, the Court must now compare the subject merchandise with the definition of the term "electric motor." *E. Green & Son,* 59 CCPA at 34, 450 F.2d at 1398. As noted above, plaintiff's submissions demonstrate the VCPD operates as follows: the VCPD's coil moves back and forth as it receives electricity, thereby causing the VCPD's arm to pivot on its fulcrum; the pivoting action of the VCPD's arm activates a carriage arm which, in turn, prompts the read/write heads to interact with the magnetic memory media used in the computer. *See* Desai Aff. at ¶ 15; Feiger Aff. at ¶¶ 16–18. Plaintiff's materials also indicate the manufacturer that incorporated the VCPDs into magnetic disk drives was able to do so "by attaching [the] carriage arm and read/write heads to the pivot arm, attaching power and control leads to the VCPD, and assembling the VCPD into the disk drive chassis." Feiger Aff. at ¶ 14. The materials further show mounting points on the VCPD's specially designed frame permit the merchandise's assembly into the chassis. Desai Aff. at ¶ 14.

The foregoing materials convince the Court the VCPD is "more than" an electric motor for tariff purposes. This Court observes, as the CCPA did in *A.W. Fenton,*

"[t]hat the instant article contains the essential elements of a motor there can be no doubt, but it is equally clear that it includes features not essential to its function as a motor." *A.W. Fenton,* 49 CCPA at 48. Plaintiff's materials clearly identify the VCPD's motor elements as the coil, the copper-covered core, and magnets. Plaintiff's materials demonstrate the transformation of electrical energy into mechanical energy that occurs in the device is solely attributable to the coil's interplay with the device's copper-covered core and magnets. The VCPD's additional components, the VCPD frame, arm, and pivoted bearing in the fulcrum, thus are "not essential to its function as a motor." *Id.* As plaintiff correctly notes, the "frame permits the precise alignment required for operation[;] . . . [t]he arm transfers the motion of the coil to the heads[;] . . . and the pivoted bearing amplifies [the heads'] displacement." Pl.'s Br. at 16.

The Court also finds, analogous to the article discussed in *A.W. Fenton,* while the article "clearly is designed for a special purpose . . . [,] the additional features it includes do more than make it a special type of motor[—t]hey dedicate it to one particular use . . . ." *A.W. Fenton,* 49 CCPA at 49. In other words, and as defendant itself acknowledges, the subject merchandise has no application outside of computer disk drives. *See* Def.'s Br. at 8 ("[T]he devices are not suitable for use other than as a positioning device.").

The VCPD's integral role in the functioning of computer disk drives further underscores the fact that the devices are not simply electric motors. *See* Desai Aff. at ¶ 6 (describing how a disk drive's read/write heads work in conjunction with the VCPDs); Feiger Aff. at ¶ 7 (same). Without a backup actuator within the disk drive that could perform the functions undertaken by the VCPDs, the removal of the VCPD would unquestionably stop the functioning of the read/write heads and thereby cause the disk drive to cease its operation. *See* Def.'s Resp. to Pl.'s Statement of Material Facts Not in Issue at ¶ 7 (admitting "[t]he actuator in a positioning system is *an essential part* required for the operation of a disk drive . . . .")

(emphasis added). For all of the foregoing reasons, the Court concludes plaintiff has established the subject merchandise is "more than" a motor and, consequently, the *eo nomine* provision upon which defendant relies, item 682.25, is inapplicable.[6] *See Phone-Mate*, 12 CIT at 581, 690 F.Supp. at 1053.

Nothing in defendant's papers or supporting materials suggests anything to the contrary. The crux of defendant's position is that the VCPDs are not "more than" a motor because they do nothing more than transform electrical energy into mechanical energy. *See* Def.'s Br. at 7 (citing Doemeny Decl. at ¶ 20). The most specific argument advanced by defendant is that "Sumitomo's claimed 'additional features' ... are all integral to the functioning of the motor." *Id.* at 7–8. The declaration proffered by defendant further states "[t]he device at issue has no additional features such as gears, shafts, and clutch mechanisms." Doemeny Decl. at ¶ 21.

Defendant has simply failed to introduce anything that creates a dispute as to whether the subject merchandise is "more than" an electric motor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Defendant has not pointed to anything which refutes plaintiff's description of the subject merchandise's function and design. Defendant has merely sought to recharacterize the particular roles played by the VCPD's various components. For the reasons noted previously in connection with the Court's discussion of the components' non-motor functions, the Court rejects defendant's contention that the components do nothing more than transform electrical energy into mechanical energy. Moreover, nothing in defendant's sub-missions substantiates defendant's assertion that "Sumitomo's claimed 'additional features' ... are all integral to the functioning of the motor." Even assuming the truth of defendant's assertion, however, the importance of those features to the motor does not negate the fact that the features are also clearly integral to the overall positioning system. Finally, the Court notes because it must decide whether an article is "more than" a description provided by a tariff item on a case-by-case basis,[7] it does not believe the absence of "gears, shafts, and clutch mechanisms" in the subject merchandise raises an issue as to whether merchandise is "more than" an electric motor. *See Anderson*, 477 U.S. at 248–50, 106 S.Ct. at 2510–11 (A "genuine issue as to [a] material fact" can only arise where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party.... If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted."). The Court concludes, therefore, no genuine issue of fact exists as to whether VCPDs are "more than" rotary motors. As defendant has not shown a genuine issue of fact exists as to whether VCPDs are "more than" rotary motors or as to any other issue of material fact in this case, the Court will proceed to its second inquiry of whether plaintiff is entitled to "a judgment as a matter of law" under USCIT R. 56(d).

### 2. Judgment as a Matter of Law

■ The determination as to whether plaintiff is entitled to "a judgment as a matter of law" depends upon the application of item 676.54.55 to the subject merchandise. As the Court's previous discussion makes clear, plaintiff has already demonstrated Customs erroneously classified the VCPDs

---

**6.** The fact that item 682.25 is inapplicable to the subject merchandise obviates the need to apply General Interpretative Rule (GIR) 10(ij) in this case. As noted above, GIR 10(ij) indicates "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part." In short, because the Court has already determined the VCPD does not fall under item 682.25, the claimed "specific provision," the Court does not have to decide between that claimed "specific provision" and the "parts" provision upon which plaintiff relies. Instead, only one provision remains under consideration—the "parts" provision in item 676.54. Consequently, the comparative analysis required under GIR 10(ij) is unnecessary in this case.

**7.** *See E. Green & Son*, 59 CCPA at 34, 450 F.2d at 1398 ("Only the most general of rules can be ascertained from the previous decisions dealing with the 'more than' doctrine, and it appears that each case must in the final analysis be determined on its own facts.").

under item 682.25. Therefore, if the materials before the Court demonstrate the VCPDs are classifiable under item 676.54.55, plaintiff would be entitled to "a judgment as a matter of law."

The Court has little difficulty in concluding the subject merchandise is classifiable under item 676.54.55. As noted previously, this provision encompasses "[p]arts of automatic data-processing machines and units thereof, other than parts incorporating a cathode ray tube.... Other: .... Other...." This Court recently provided the following description of the examination that is necessary for determining whether merchandise qualifies as a "part" of an article:

> In order to decide whether an item is "solely or chiefly used as a part of [an] article," the Court must consider the "nature, function and purpose of an item in relation to the article to which it is attached or designed to serve." *Ideal Toy Corp. v. United States,* 58 CCPA 9, 13, C.A.D. 996, 433 F.2d 801, 803 (1970) (citing *Gallagher & Ascher Co. v. United States,* 52 CCPA 11, 13–14, C.A.D. 849 [1964 WL 8616] (1964)). In general, "a 'part' of an article is something necessary to the completion of that article.... [I]t is an integral, constituent, or component part, without which the article to which it is joined, could not function as such article." *Gallagher,* 52 CCPA at 14 (citing *United States v. Willoughby Camera Stores,* 21 CCPA 322, 324, T.D. 46,851 [1933 WL 1887] (1933)). Nevertheless, the mere "fact that the article operates, functions or can be used without the item is not determinative." *Ideal Toy,* 58 CCPA at 13, 433 F.2d at 803 (citing *Trans Atlantic Co. v. United States,* 48 CCPA 30, C.A.D. 758 [1960 WL 8476] (1960)).

*Mitsubishi Int'l v. United States,* 17 CIT ——, ——, 829 F.Supp. 1387, 1395 (1993).

The Court's analysis in *Mitsubishi International* is instructive in this case. There, the Court considered whether various components imported for use in a continuous steel casting machine were classifiable as casting machine parts. *See id.* at ——, 829 F.Supp. at 1395. The Court concluded the components were casting machine parts after finding "all of the subject components satisfy a specific and integral need in the casting machine's operation." *Id.* at ——, 829 F.Supp. at 1395. The Court also noted "[t]he fact that the subject components are 'dedicated for use' in the casting machine further compels this conclusion." *Id.* at ——, 829 F.Supp. at 1395. The Court observed "[w]here items are 'dedicated for use' upon an article and can not apply to any other purpose, courts have generally found the items to be parts of the article for which they were imported." *Id.* at ——, 829 F.Supp. at 1395 (citing *United States v. Pompeo,* 43 CCPA 9, 13, C.A.D. 602, 1955 WL 6859 (1955)) (other citation omitted).

The "parts" inquiry prescribed by *Mitsubishi International* clearly shows the VCPDs are "parts of automatic data-processing machines" within the meaning of item 676.54.55. The uncontroverted showings made by plaintiff indicate the VCPDs are "integral" to the functioning of the computer hard disk drives in which they operate. *See* Desai Aff. at ¶ 6 (describing how a disk drive's read/write heads work in conjunction with the VCPDs); Feiger Aff. at ¶ 7 (same). In short, absent a backup actuator within the disk drive that could perform the functions undertaken by the VCPDs, the removal of the VCPD would unquestionably stop the functioning of the read/write heads and thereby cause the disk drive to cease its operation. *See* Def.'s Resp. to Pl.'s Statement of Material Facts Not in Issue at ¶ 7 (admitting "[t]he actuator in a positioning system is *an essential part* required for the operation of a disk drive....") (emphasis added). It is similarly undisputed in this case that the VCPDs are "dedicated for use" upon the disk drives. *See* Def.'s Br. at 8 (acknowledging "[b]ecause of the fulcrum, *the devices are not suitable for use other than as a positioning device*[ ]") (emphasis added). Because plaintiff has demonstrated the VCPDs have no application apart from their use in the magnetic disk drives and the disk drives in which the VCPDs operate could not function without the VCPDs absent an alternate actuator, the Court concludes plaintiff has demonstrated the VCPDs are "parts of automatic data-processing machines and units thereof" un-

der item 676.54.55. *See Mitsubishi Int'l,* 17 CIT at ——, 829 F.Supp. at 1395. Consequently, the Court further concludes plaintiff is entitled "to a judgment as a matter of law." USCIT R. 56(d).

### IV. CONCLUSION

The Court holds that plaintiff has overcome the statutory presumption of correctness attached to Customs' classification of the subject merchandise under item 682.25, TSUS (1986 & 1987). The Court also holds plaintiff has demonstrated the subject merchandise is properly classifiable under item 676.54.55, TSUS (1987) or item 676.52, TSUS (1986), depending on date of entry. Judgment will enter for plaintiff.